*180 OPINION OF THE COURT
Stein, J.
Defendant was charged with one count of criminal possession of a weapon in the fourth degree (see Penal Law § 265.01 [1]). The accusatory instrument alleged that a police officer observed defendant with a “rubber-gripped, metal, extendable baton (billy club)” in his rear pants pocket. The officer averred—based on his training and experience—that “said baton device is designed primarily as a weapon, consisting of a tubular, metal body with a rubber grip and extendable feature and used to inflict serious injury upon a person by striking or choking.” Defendant moved to dismiss the accusatory instrument as facially insufficient. Criminal Court granted defendant’s motion, concluding that the allegations describing the object possessed by defendant were insufficient to charge him with possessing a billy within the meaning of Penal Law § 265.01 (1). The Appellate Term affirmed (48 Misc 3d 127[A], 2015 NY Slip Op 50929[U] [App Term, 1st Dept 2015]). A Judge of this Court granted the People leave to appeal (26 NY3d 970 [2015]), and we now reverse.
To be facially sufficient, the factual allegations of a complaint or information, together with those of any supporting depositions, must “provide reasonable cause to believe that the defendant committed the offense charged” in the instrument (CPL 100.40 [1] [b]; [4] [b]; see People v Kalin, 12 NY3d 225, 228 [2009]). A misdemeanor information must also contain “[n]on-hearsay allegations . . . [which] establish, if true, every element of the offense charged and the defendant’s commission thereof” (CPL 100.40 [1] [c]; see People v Smalls, 26 NY3d 1064, 1066 [2015]). We have oft stated that, “ ‘[s]o long as the factual allegations of an information give an accused notice sufficient to prepare a defense and are adequately detailed to prevent a defendant from being tried twice for the same offense, they should be given a fair and not overly restrictive or technical reading’ ” (Smalls, 26 NY3d at 1066-1067, quoting People v Casey, 95 NY2d 354, 360 [2000]).
*181 Here, defendant argues that the accusatory instrument is facially insufficient because the object described therein does not constitute a “billy” under Penal Law § 265.01 (1). More specifically, he contends that the accusatory instrument describes the object as being “metal” and “extendable,” whereas, in his view, the statutory term “billy” refers only to short, wooden clubs of a fixed length.
The starting point for our analysis is the statutory language in question (see People v Golo, 26 NY3d 358, 361 [2015]). Under Penal Law § 265.01 (1), a person commits the offense of criminal possession of a weapon in the fourth degree when he or she possesses a “billy.” The legislative prohibition on billies was enacted in 1866 (see L 1866, ch 716).[1] At that time, “billies” or “billy clubs” were generally comprised of wood. The Penal Law does not define the term “billy,” wooden or otherwise, but we recognized, over a century ago, that the weapons prohibited by section 265.01 (1), including billies, had a “well-understood character” (People v Persce, 204 NY 397, 402 [1912]). As commonly occurs with weaponry, however, technological advances throughout the years have resulted in modifications to the traditional wooden billy. Today, such weapons, often referred to as “batons,” may be comprised of metal or synthetic materials, and variations include either fixed length or “extendable” instruments. The issue before us on this appeal distills to whether the “well-understood character” (id.) of a “billy,” as used in Penal Law § 265.01 (1), encompasses an extendable, metal baton.
Because the Penal Law contains no definition of “billy,” we must give the term its “ordinary” and “commonly understood” meaning (People v Versaggi, 83 NY2d 123, 129 [1994]; see People v Morales, 20 NY3d 240, 247 [2012]; People v Quinto, 18 NY3d 409, 417 [2012]). In determining the meaning of statutory language, we “have regarded dictionary definitions as useful guideposts” (Yaniveth R. v LTD Realty Co., 27 NY3d 186, 192 [2016]; see e.g. Versaggi, 83 NY2d at 129). To that end, a billy has been defined as a “small bludgeon that may be carried in the pocket; a club; especially, a policeman’s club” (1 Black’s Law Dictionary 213 [4th ed 1951]). Although some dictionaries note that a billy is usually a wooden instrument *182 (see e.g. Merriam-Webster’s Collegiate Dictionary 122 [11th ed 2003]), the definitions are not limited thereto, and dictionary definitions generally recognize that the term “baton” is synonymous with the word “billy” or “billy club” (see e.g. Webster’s Unabridged Dictionary 207 [2d ed 2001]; Merriam-Webster Online Dictionary, billy club [http://www.merriam-webster.com/dictionary/billy%20club] [accessed Oct. 11, 2016]).
Notably, case law in this state has recognized that the terms “nightstick” and “baton” may be interchangeable with the term “billy” (see People v Talbert, 107 AD2d 842, 843-844 [3d Dept 1985] [defining billy as a “heavy wooden stick with a handle grip which, from its appearance, is designed to be used to strike an individual and not for other lawful purposes” but recognizing that “(a) policeman’s nightstick or billy club is clearly a billy”]; People v Schoonmaker, 40 AD2d 1066, 1066-1067 [3d Dept 1972] [policeman’s club, referred to as a “baton,” “fits any standard definition of the term ‘billy’”]). Likewise, courts in other jurisdictions have held, when interpreting criminal statutes, that a modern-day collapsible, metal baton falls within the common definition of a billy (see Shahit v City of Detroit Police Officer Tosqui, 2005 WL 1345413, *15, 2005 US Dist LEXIS 44942, *47-48 [ED Mich, June 1, 2005, No. 04-71538] [collecting definitions], affd, 192 Fed Appx 382 [6th Cir 2006]; People v Mercer, 42 Cal App 4th Supp 1, 5, 49 Cal Rptr 2d 728, 730 [App Dept, Super Ct 1995]).
As the People point out, Penal Law § 265.20 (b) also lends support to their position that a “baton” may qualify as a type of billy under Penal Law § 265.01 (1). This statute was amended in 1979 in response to an Appellate Division decision equating a police “baton” to a “billy” (L 1979, ch 667; see Mem in Support, Bill Jacket, L 1979, ch 667; Schoonmaker, 40 AD2d at 1066-1067). Concerned that the carrying of batons by auxiliary police officers would violate Penal Law § 265.01 (1), the legislature enacted section 265.20 (b) to create an exception, which states, in relevant part, that the prohibition against possessing a billy set forth in section 265.01 “shall not apply to possession of that type of billy commonly known as a ‘police baton’ ” of specified dimensions if possessed by auxiliary police officers in certain cities (Penal Law § 265.20 [b] [emphasis added]; see Mem in Support, Bill Jacket, L 1979, ch 667). While we are mindful that Penal Law § 265.01 (1) should be interpreted narrowly in light of the absence of an intent element, this language in section 265.20 (b)—which must be harmonized *183 and interpreted consistently with Penal Law § 265.01—plainly demonstrates that the legislature considered “batons” that are designed as weapons to be a “type of billy” (Penal Law § 265.20 [b]; see generally McKinney’s Cons Laws of NY, Book 1, Statutes § 97).[2]
The common thread, consistent with the general understanding of the term, is that a “billy” is a cylindrical or rounded, rigid, club or baton with a handle grip which, from its appearance and inherent characteristics, is designed to be used as a striking weapon and not for other lawful purposes.[3] Such a definition or description does not hinge on the type of material of which the billy is comprised, as is plain from the absence of any statutory language limiting the term “billy” to a specific material. Indeed, although the legislature has banned some weapons made of a specific material, it has not done so with the “billy.” For example, Penal Law § 265.01 (1) initially prohibited only “metal” knuckles, but was later amended to also ban “plastic” knuckles—an amendment made necessary by the legislature’s original qualification of the term “knuckles” as being comprised of “metal.” Absent such an amendment, an interpretation of “metal” knuckles as including “plastic” would conflict with the plain language of the statute. By comparison, *184 the legislature has never prohibited only “wooden” billies—or, as the dissent suggests, “wooden club[s]” (dissenting op at 187)—signaling that its intended definition is not confined to objects made out of a particular material, as defendant would have us hold. Unquestionably, a billy made of metal or other synthetic material remains a billy under the statute in accordance with the ordinary meaning of the term. In so concluding, we do not read the relevant statute “broadly” (dissenting op at 188 n 2) but, rather, give effect to the plain meaning of the statutory language, as the term “billy” is commonly understood.
Similarly, the collapsible or extendable nature of the instrument described in the accusatory instrument does not meaningfully change the essence, functionality, or inherent characteristics of the object such that the baton should be considered a weapon separate and distinct from a billy. Initially, we note that the common definitions of the term “billy” do not specifically require that the instrument be of fixed length, as the dissent assumes. Moreover, to conclude that the mere fact that a billy is collapsible or extendable renders it a different weapon altogether would produce an absurd result whereby, absent a specific statutory amendment, minor modifications to an instrument that do not alter its general characteristics, purpose, or primary use and function as a weapon—modifications which incidentally may, as here, actually render a weapon more dangerous or easily concealed—would insulate the possessor from criminal liability (see People v Garson, 6 NY3d 604, 614 [2006] [“we must interpret a statute so as to avoid an unreasonable or absurd application of the law” (internal quotation marks omitted)]).
In our view, the foregoing leads to the conclusion that the only plausible interpretation of the term “billy” encompasses a collapsible metal baton (see People v Green, 68 NY2d 151, 153 [1986] [noting that, while the interpretation of a criminal statute that is more favorable to defendant should be adopted where there are two plausible constructions, “the core question always remains that of legislative intent”]). Our conclusion in this regard does not rest—as the dissent suggests—on whether or not law enforcement personnel has chosen to use this particular type of instrument. Rather, our determination follows from the common understanding of the term “billy” and our view that the baton at issue here fits comfortably within the definition thereof. Therefore, we hold that the accusatory instrument alleging that defendant possessed a metal, extend *185 able striking weapon with a handle grip was sufficient to charge him with possessing a “billy” under Penal Law § 265.01 (1) so as to provide sufficient notice for him to prepare a defense and to protect him from multiple prosecutions. Defendant raises no preserved constitutional challenge to Penal Law § 265.01 (1) as so interpreted.[4]
Accordingly, the order of the Appellate Term should be reversed and defendant’s motion to dismiss the accusatory instrument denied.

. In 1866, the relevant statute did not criminalize mere possession of the listed weapons (see L 1866, ch 716). The legislature amended the statute in 1905 to make possession of the enumerated weapons, including a “billy,” a strict liability offense (see L 1905, ch 92, § 2).

. To the extent the dissent implies that the legislature’s failure to enact a 2008 proposed amendment adding “collapsible batons” to Penal Law § 265.01 (1) supports its position that the existing prohibition on “billies” does not include collapsible batons, we note that “inaction by the Legislature is inconclusive in determining legislative intent” (Matter of New York State Assn. of Life Underwriters v New York State Banking Dept., 83 NY2d 353, 363 [1994]; Clark v Cuomo, 66 NY2d 185, 190-191 [1985]) and such inaction is susceptible to varying interpretations. In any event, more recently proposed legislation arguably suggests that at least some of the members of the legislature interpret the prohibition on “billies” to include “collapsible batons”; that legislation would amend Penal Law § 265.20 (b) to expressly permit auxiliary police officers to carry “collapsible batons” by exempting them from application of the prohibition on billies in Penal Law § 265.01 (1) (see 2015 NY Senate Bill S1142; 2015 NY Assembly Bill A59).

. Contrary to the dissent’s assertion, this definition does not render superfluous the inclusion of the terms blackjack, bludgeon, and sandclub in Penal Law § 265.01 (1). While an in-depth discussion of the definitions of such weapons is outside of the scope of our holding in this case, it suffices to note that such instruments have defining characteristics that distinguish them from billies (see generally People v McPherson, 220 NY 123, 125 [1917] [a bludgeon has one heavier or thicker end]; see People v Guevara, 86 Misc 2d 1044, 1045 [Crim Ct, Bronx County 1976] [a blackjack has a characteristically flexible handle]; see also 2 Black’s Law Dictionary 1507 [4th ed 1951] [a sandbag is defined as “(a) tube of strong, flexible material filled with sand” (emphasis added)]).

. For that reason, any challenge based on the void for vagueness doctrine (see generally People v Cruz, 48 NY2d 419, 423 [1979]), addressed by the dissent, is not properly before us.