This opinion is uncorrected and subject to revision before publication in the New York Reports.
--------------------------------------------------------------------

No. 91
The People &c.,
          Respondent,
        v.
John Andujar,
          Appellant.




          Karen M. Kalikow, for appellant.
          Catherine M. Reno, for respondent.




RIVERA, J.:

          Defendant, a tow truck operator, was charged under

Vehicle and Traffic Law § 397, which provides,

          "[a] person, not a police officer or peace
          officer, acting pursuant to his special
          duties, who equips a motor vehicle with a

- 1 -

radio receiving set capable of receiving
signals on the frequencies allocated for
police use or knowingly uses a motor vehicle
so equipped . . . without having first
secured a permit so to do . . . is guilty of
a misdemeanor. . . ." (VTL 397).

This case presents a discrete statutory construction question regarding whether the statute's prohibition on equipping a motor vehicle with a police radio scanner, or knowingly using a vehicle so equipped, applies in the case of a freestanding device found on a defendant driver's person.  We conclude the statute does not require that the prohibited device be physically attached to the motor vehicle.

***

The initial charging instrument alleged that while the deponent officer was "responding to a radio call of a motor vehicle accident . . . he observed defendant seated behind the driver's seat and operating" a pick-up truck bearing the name of a tow truck company.  The officer claimed that defendant stated, "I received a radio call for an off duty officer in an accident." The officer "observed defendant to have on his person, inside his front left jacket pocket, one (1) scanner, which was on and receiving signals on the frequencies allocated for police use . . . . [D]efendant could not produce a permit to operate and or possess said scanning device."  The prosecution subsequently filed a superseding accusatory instrument which added that the officer had been trained in radio receivers capable of receiving police frequencies, and that when he turned on the receiver he

heard frequencies from the particular police precincts, as indicated on the receiver's display panel.

Criminal Court granted defendant's motion to dismiss the accusatory instrument on the ground that the superseding information lacked allegations that the motor vehicle was equipped with the scanner, as there were "no allegations that the scanner was specifically prepared to be used with a vehicle, either by having a particular power cord or otherwise."  The Appellate Term reversed, concluding that the accusatory instrument was sufficient for pleading purposes because the factual allegations were adequate to put defendant on notice of the charge and that the statute does not require the scanner to be attached to or otherwise installed in the motor vehicle (People v Andujar, 49 Misc 3d 36, 36 [App Term, 1st Dept 2015]). According to the court, because "the scanner was in defendant's jacket pocket, where it could be accessed and operated in the vehicle within seconds, the accusatory instrument was sufficient for pleading purposes, to satisfy the 'equips a motor vehicle' element of the charge" (id. at 38).  A Judge of this Court granted defendant leave to appeal (People v Andujar, 26 NY3d 1085 [2015]).

Our analysis begins with the language of the statute. Neither the VTL nor the Penal Law defines "equips" or any derivation of that word.  Absent a statutory definition "we must give the term its 'ordinary' and 'commonly understood' meaning

(People v Ocasio, 28 NY3d 178, 181 [2016], citing People v Versaggi, 83 NY2d 123, 129 [1994]; see People v Morales, 20 NY3d 240, 247 [2012]; People v Quinto, 18 NY3d 409, 417 [2012]).  To that end, "[i]n determining the meaning of statutory language, we 'have regarded dictionary definitions as useful guideposts'" (Ocasio, 28 NY3d at 181, quoting Yaniveth R. v LTD Realty Co., 27 NY3d 186, 192 [2016]).

A review of recent sources and those available at the time the statute was enacted in 1933 indicates that "equips" does not necessitate physical attachment or a special adaptation.  For example, Merriam-Webster classifies "equip" as a transitive verb defined as, "to furnish for service or action by appropriate provisioning," or "to make ready" (Merriam Webster's Collegiate Dictionary, 10th ed 1997).[1]  The Random House Dictionary of the English Language defines the word as "to furnish or provide with whatever is needed for use or for any undertaking; fit out, as a ship or army" (2d ed 1987).  Webster's Third New International Dictionary defines it as "to provide what is necessary, useful, or appropriate" or "to make ready or competent for service or

_____

    [1]  A transitive verb is "characterized by having or
containing a direct object" (Merriam Webster's Collegiate
Dictionary, 10th ed 1997).  An intransitive verb, on the other
hand, does not have a direct object.  For example, "I walk" is an
intransitive verb, while "I wear pants" is an example of a
transitive verb.

action or against a need" (1981).[2]  This definition has remained largely unchanged in Webster's since at least 1913.  The definition in Black's Law Dictionary is nearly identical, providing that the word means, "to furnish for service or against a need or exigency; to fit out; to supply with whatever is necessary for efficient action" (10th ed 2014 [the definition from the 1951 edition is nearly identical]).

Under these definitions "equip" means to provide something with a particular feature or ability.  None states or implies any need for the object's physical attachment to the thing equipped.  To the contrary, the essential quality or meaning of the word is the act of outfitting to prepare for the ready, irrespective of whether an item or device has permanent or temporary connection to the object equipped.  As the District Court for the Eastern District of New York concluded after canvassing dictionaries to determine the "ordinary everyday meaning" of the word "equipped" as used in a federal statute prohibiting certain firearms "equipped" with a silencer, "[w]hat is key to these definitions is not whether items are attached to one another, as urged by defendant, but whether the items stand in a relation one to the other that makes them ready for efficient service to meet a particular need or exigency" (United

---

[2] As an example, which was previously quoted in People v Verdino (78 Misc 2d 719, 721 [Suffolk County Ct 1974], Webster's Third New International Dictionary provides: "[H]e was equipped with letters that opened every European door."

States v Rodriguez, 841 F Supp 79, 83 [EDNY 1994], affd 53 F3d 545 [2d Cir 1995], citing People v Verdino, 78 Misc2d 719, 721 [Suffolk County Ct 1974]).  Giving "equip" its commonly understood meaning, VTL 397 applies regardless of whether the prohibited device is physically attached to the motor vehicle, so long as the device is ready for efficient service.

Other sections of the VTL use the terms "fastened," "mounted," "affixed," or "attached" in combination with the term "equipped" to describe the physical location of the object in the motor vehicle, which supports our construction of section 397. For example, VTL 375(48)(b) provides that a motor vehicle must be "equipped with a side view mirror which shall be affixed to the left side," and section 375(9) provides that a bus must be "equipped with one hand fire extinguisher mounted in a place readily accessible for use."  If the legislature intended "equip" to mean that the object must be physically attached, the terms "affixed" and "mounted" would be unnecessary.  It would have been straightforward enough to draft these sections to read that "the mirror be equipped on the left side," or that a bus must be "equipped with one hand fire extinguisher in a place readily accessible for use."  The Legislature's word choice illustrates that when the Legislature intends the law to encompass a device or object attached to a motor vehicle, it generally uses terms that require a physical connection and reserves the terms "equips" and "equipped" for a broader category of circumstances.

Had the legislature only intended to prohibit scanners affixed to or mounted within the motor vehicle, it would have used those specific words.[3]

This interpretation effectuates the legislative purpose of VTL 397. "When presented with a question of statutory interpretation, our primary consideration 'is to ascertain and give effect to the intention of the Legislature'" (DaimlerChrysler Corp. v Spitzer, 7 NY3d 653, 660 [2006], quoting Riley v County of Broome, 95 NY2d 455, 463 [2000]). While "the

---

[3] The dissent points out that there are numerous provisions in the VTL where "the statute plainly refers to equipping something that is attached to, functions with, or is a part of the vehicle" (dissenting op at 5). As we make clear, physical attachment can be one way to equip, and the examples cited by the dissent illustrate that there are objects that necessitate attachment in order to properly function in or on a motor vehicle. However, the examples cited demonstrate that the VTL is focused on how objects are used together. The requirement that every vehicle be "equipped with suitable wipers" means that the vehicle must have wipers placed in a location so their purpose of removing rain, snow, and debris from the windshield can be effectuated (VTL 375 [1] [b]). For a vehicle's tamper-resistant odometer to fulfill its function in a car being sold at a used car dealership, it must be connected to the car in a way that allows a potential purchaser to accurately gauge its mileage (VTL 417-b). A similar logic applies to the statutory language that refers to the equipping of snow tires, ignition interlock devices, data recorders, and trunks (dissenting op at 5).
    This common sense notion of the connection between the vehicle, the operator, and the item equipped is also evident in VTL 375 (24), which was intended to combat the obvious dangers of watching television while driving (see Bill Jacket, L 1964, ch 472). Notwithstanding the inartful drafting of the provision, its plain language indicates the legislative intent is to prevent televisions from being operated in vehicles within view of drivers, whether affixed to the car, placed on a seat, or held by the driver or a passenger (see id., Bill Jacket, L 1966, ch 723).

words of the statute are the best evidence of the Legislature's intent," legislative history may also be relevant as an aid to construction of the meaning of words (Riley, 95 NY2d at 463). Contrary to the dissent's assertion, letters in support of the legislation do indeed shed light on the legislative intent (dissenting op at 3). The bill sought to "make it difficult for criminals to receive police emergency broadcasts" and "prevent lawbreakers from obtaining police radio information" while operating a motor vehicle (Letter from Syracuse Chief of Police, Letter from Brooklyn Chamber of Commerce, Bill Jacket, L 1933, ch 405). The statute addresses the unique harm posed by police scanners used in conjunction with motor vehicles -- for instance, in the case of vehicles "equipped with police radios for lookout purposes when crimes are committed," or "tow trucks equipped with police radios for the purpose of securing towing business at [the] scene of automobile accidents" (Letter from Office for Local Government, Bill Jacket, L 1966, ch 620). Overall, there is nothing in the plain language of the statute or the legislative history that suggests the term "equip" should be given anything other than its obvious meaning.[4]

---

[4] Contrary to the dissent's assertion (dissenting op at 2), the rule of lenity is not implicated here as VTL 397 does not lend itself to multiple interpretations in accordance with its law enforcement purpose. Regardless, while a criminal statute should be interpreted in defendant's favor where there are two plausible constructions, "the core question always remains legislative intent" (People v Ocasio, 28 NY3d 178, 184 [2016], quoting People v Green, 68 NY2d 151, 153 [1986]), and for the

Given the purpose of the legislation -- to reduce access inside motor vehicles to police radio signals -- it is irrelevant whether the device is mounted, lying on the seat, or in a defendant's pocket so long as the device is readily accessible for immediate use in the vehicle.[5]  If not, and in direct violation of the legislative intent, lookouts could listen to police emergency broadcasts while operating getaway vehicles and tow truck operators could scan police frequencies to be first at the scene of automobile accidents so long as the scanners involved are not physically connected to the respective vehicles. To give the statutory terms this narrow construction advocated by the defendant and the dissent "would be inimical to the public policy underlying [the statute] and would conflict with the legislative intent which is apparent in the language of the statute as a whole. . . .  Moreover, [this] construction, if given effect, could, as a practical matter, frustrate the very

reasons we discuss, the dissent's construction undermines the clear legislative intent of VTL 397 to prevent individuals from accessing police radio signals while inside motor vehicles.

[5] We are unpersuaded by defendant's reference to a 1970 letter from an attorney at the State Office for Local Government in support of different legislation that he maintains supports his position.  First, the letter, prepared decades after the statute became law, does not reveal legislative intent at the time of enactment and, in any event, stands in contrast to the statute's own legislative history, which makes no mention of a requirement of physical attachment (see Bill Jacket, L 1933, ch 405).  Second, the opinion expressed in the letter contradicts the commonly understood meaning of "equips," both at the time of the statute's enactment as well as the year in which the letter was written.

purpose of the legislation" (Capital Newspapers, Div. of Hearst Corp. v Whalen, 69 NY2d 246, 252 [1987]).

Defendant mistakenly relies on Verdino in support of his argument that in order to be adapted for use inside the motor vehicle, the device necessarily must be attached. Verdino involved a defendant's violation of VTL 397 for possessing in his car a scanner that could be plugged into the car's cigarette lighter socket. That court rejected the defendant's argument that section 397 applied only to a device that was actually plugged in and attached. The court held that the relevant definitions "clearly illustrate that a physical fastening is neither implicit in the term 'equip' nor necessary in order for a vehicle to be equipped as proscribed in the statute, and that the use of the term 'equipped' in the statute should be interpreted as synonymous with 'fitted out', or 'furnished'" (id. at 721). Since all of the necessary equipment was in the car and the receiver "was 'capable' of receiving police broadcasts at any time that the defendant chose to use it," the court reasoned that "[t]his is the very situation which Section 397 of the [VTL] seeks to prevent and the defendant is properly charged under this section" (id. at 721-722). Contrary to defendant's contention, Verdino stands for the proposition that a motor vehicle is equipped with the device when the device is readily available for use. Physical attachment is one way to equip, but not the sole or statutorily prescribed manner in which to equip a motor

vehicle.[6]

The dissent concedes that attachment is not necessary (dissenting op at 3-4). Nevertheless, all of the examples utilized by the dissent involve a physical or wireless connection. As such, the dissent would find a vehicle to be equipped with a radio scanner if the portable device was in defendant's pocket and the audio played through the vehicle's speakers, rather than the device's speakers. We assume the dissent would agree that a vehicle is equipped with a radio scanner if the portable device was battery operated and placed on a removable dashboard mount -- like a portable GPS device -- even if the audio played through the device's own speakers. Yet according to the dissent's analysis the vehicle is not equipped if the same scanner is turned on and lying in the driver's lap. This is a distinction without meaning, and the dissent is unable to point to any definition of the word "equip" or anything in this statute's legislative history in which physical connection or wireless linkage is fundamental.

Turning to the sufficiency of the accusatory instrument in defendant's case, we apply our well established rules that the

------

[6] Notwithstanding the dissent's claim that adopting this interpretation "introduces significant ambiguity" (dissenting op at 6), the average person should find it no more difficult to understand the prohibition on operating a vehicle containing an accessible and functional police scanner than the prohibition on possessing extendable metal batons following our decision in Ocasio.

factual part of a facially sufficient misdemeanor information must show "reasonable cause" that a "prima facie" case exists against the defendant (People v Kalin, 12 NY3d 225, 229 [2009]; CPL § 100.15, 100.40).  "Reasonable cause" exists when "evidence or information which appears reliable discloses facts or circumstances" adequate "to convince a person of ordinary intelligence, judgment and experience that it is reasonably likely that" defendant committed the offense (CPL 70.10 [2]). "So long as the factual allegations of an information give an accused notice sufficient to prepare a defense and are adequately detailed to prevent a defendant from being tried twice for the same offense, they should be given a fair and not overly restrictive or technical reading" (People v Casey, 95 NY2d 354, 360 [2000]).

Here, the People's superseding information set forth sworn allegations that the deponent officer observed defendant operating a tow truck on a public roadway while carrying a device in his jacket pocket, easily accessible and ready for use, that was capable of receiving police radio signals from two precincts. Applying "a fair and not overly restrictive technical reading" to these factual allegations (id.), the superseding information was facially sufficient to establish reasonable cause to believe defendant violated VTL 397.

Accordingly, the order of the Appellate Term should be affirmed.

People v Andujar

No. 91

STEIN, J.(dissenting):

        I respectfully dissent.  The superseding information in this case charged defendant with violating Vehicle and Traffic Law § 397.  The information alleged that a police officer responding to a motor vehicle accident noticed defendant operating a tow truck near the accident site.  When stopped, defendant informed the officer that he had received a telephone call regarding an accident.  The police officer stated in the information that, during his interaction with defendant, he observed a "radio receiver, also known as a scanner," in defendant's front left jacket pocket, which -- when switched on by the officer -- was capable of receiving frequencies allocated for police use.  The question before us is whether, based on these allegations, the accusatory instrument was facially sufficient to charge defendant with violating Vehicle and Traffic Law § 397.  I would answer that question in the negative.

        Section 397 of the Vehicle and Traffic Law provides, as relevant here, that it is a misdemeanor offense for anyone other than police and peace officers to "equip[] a motor vehicle with a radio receiving set capable of receiving signals on the frequencies allocated for police use or knowingly use[] a motor

- 1 -

vehicle so equipped."  Whether the information here is facially sufficient to charge defendant with a violation of this provision turns on a question of statutory interpretation -- namely, whether the mere presence of a portable police scanner on one's person while in a motor vehicle constitutes "equip[ping] a motor vehicle" with the scanner (Vehicle and Traffic Law § 397).

As the majority recognizes, "the clearest indicator of legislative intent is the statutory text, [and] the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof" (People v Golo, 26 NY3d 358, 361 [2015], quoting Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 583 [1998]). "In the absence of any controlling statutory definition, we construe words of ordinary import with their usual and commonly understood meaning, and in that connection have regarded dictionary definitions as useful guideposts in determining the meaning of a word or phrase" (Rosner v Metropolitan Prop. & Liab. Ins. Co., 96 NY2d 475, 479-480 [2001] [internal quotation marks and citation omitted]; see People v Ocasio, 28 NY3d 178, 181 [2016]; People v Aragon, 28 NY3d 125, 128 [2016]; People v Versaggi, 83 NY2d 123, 129 [1994]).  Notably, however, "'[i]f two constructions of a criminal statute are plausible, the one more favorable to the defendant should be adopted in accordance with the rule of lenity'" (People v Golb, 23 NY3d 455, 468 [2014], quoting People v Green, 68 NY2d 151, 153 [1986]).

Neither the Vehicle and Traffic Law nor the Penal Law define the term "equip," and the legislative history for the 1933 enactment of the predecessor to Vehicle and Traffic Law § 397 does not shed any light on the intended meaning of that term (see Bill Jacket, L 1933, ch 405).[1]  As the majority explains, dictionaries generally define "equip" -- with some variation -- as "furnish[ing] for service or against a need or exigency; . . . fit[ting] out; . . . [or] supply[ing] with whatever is necessary for efficient action" (Black's Law Dictionary [10th ed 2014], equip).  I do not disagree with the majority's adoption of this definition in relation to section 397.  I do, however, disagree with its interpretation of that definition and its application to the statute.

In Vehicle and Traffic Law § 397, the direct object of the verb "equip[]" is the "motor vehicle," not the operator of the vehicle.  Thus, the plain language of the statute compels the conclusion that some relationship between the vehicle and the device is required.[2]  Although I agree with the majority's

_____

[1]  To be sure, the bill jacket may shed light on the legislature's intent, generally, to prevent criminals from equipping vehicles with radio receiving sets capable of receiving police signals.  The legislative history does not, however, clarify the intended meaning of the term "equip."

[2]  Even the majority acknowledges that the vehicle is the object of the verb "equip" (see majority op, at 4, n 1).  While the majority states that the statute was intended to prohibit the "use[]" of a scanner "in conjunction" with a vehicle, this is not the language utilized by the legislature (majority op, at 8).  In any event, mere possession of such a device in a vehicle is

conclusion that, given the state of technology today, physical attachment is not necessarily required, there must be some connection beyond the mere location of the device inside the vehicle.  For example, a sufficient connection would be established where a scanner was linked to the radio system of the vehicle, either manually or wirelessly, or where the scanner was set up to be charged through the vehicle.  In such situations, the vehicle -- not just an occupant of the vehicle -- is equipped with the device.[3]

The effect of the majority's holding is that the mere possession of an item by defendant while operating a motor vehicle is the equivalent of "equipping" a vehicle with that item.  This interpretation strains credulity, ignores the language of the statute, broadens the common definition of the term "equip," and is inconsistent with the ordinary meaning that an average person would ascribe thereto.  Under the circumstances presented here, the scanner and the vehicle did not "stand in such a relation to one another that they can efficiently be pressed into joint service," since the use of one was completely independent of and unrelated to the use of the other beyond the happenstance of location (United States v Rodriguez, 841 F Supp

---

insufficient.

[3]  Although the majority finds no meaning in this distinction, the legislature apparently did, as evidenced by its choice to apply the prohibition only where a vehicle is "equipped" with a scanner.

79 [ED NY] 1994, affd 53 F3d 545 [2nd Cir 1995]).  Defendant did not "provide [the vehicle] with a particular feature or ability" or otherwise "outfit" or "prepare" the vehicle for use with the scanner (majority op, at 5).  Rather, he simply possessed a scanner on his person while in a vehicle.  In my view, the language of Vehicle and Traffic Law § 397 -- which prohibits only "equip[ping]" a vehicle with such a device -- does not encompass such an act.

Despite the majority's conclusion to the contrary, the use of the term "equip" throughout the Vehicle and Traffic Law supports an interpretation that requires, in order for a vehicle to be "equipped" with an object, that the object be attached, affixed, or otherwise function with or through the vehicle in some manner.  In numerous provisions where the term "equipped" appears in the Vehicle and Traffic Law, the statute plainly refers to something that is attached to, functions with, or is a part of the vehicle (see e.g. Vehicle and Traffic Law §§ 145-d [referring to vehicle equipped with certain tires]; 375 [1] [b] [requiring that every vehicle be "equipped with suitable wipers"]; 416-b [referring to vehicle equipped with data recorder]; 417-b [referring to vehicle being equipped with functioning odometer]; 1164 [referring to vehicle being equipped with turn signals]; 1198 [referring to vehicle equipped with ignition interlock device]; 1227 [referring to a vehicle "that is not equipped with a trunk"]).

Indeed, Vehicle and Traffic Law § 375 (24), which prohibits operating a vehicle "equipped" with a television receiving set within view of the driver, plainly recognizes that the term "equip" does not encompass mere possession and use of a prohibited device in a vehicle absent some inherent connection between the two. That statute concomitantly prohibits "equipping" the vehicle with a television within view of the driver and the "operation" of a television receiving set within the view of the operator (id. § 375 [24]). This latter portion of the statute would be rendered superfluous under the majority's interpretation of the term "equip" as not requiring any connection between the vehicle and the device at issue because, according to the majority's view, the operation of a television within the view of a driver would necessarily mean that the vehicle is equipped therewith. Since -- as the majority notes -- the legislative intent of section 375 (24) was to prevent televisions from being used within view of the driver, whether attached to the car in some way (i.e., the vehicle is equipped) or merely operated on a seat or held by a passenger (i.e., the vehicle is not equipped), the legislature deemed it necessary to separately prohibit these distinct circumstances.[4] Likewise,

---

[4] Contrary to the majority's claim, the manner in which the legislature used the term "equipped" in section 375 may not be disregarded as mere "inartful drafting" simply because it is inconsistent with the majority's interpretation of that term in section 397 (majority op, at 7 n 3; see McKinney's Cons Laws of NY, Book 1, Statutes § 73).

here, if the legislature seeks to prohibit <u>use</u> or <u>possession</u> of a police scanner in a vehicle -- as compared with <u>equipping</u> a vehicle with such a device -- it must so state in the statute.

To the extent the majority relies on certain other Vehicle and Traffic Law provisions to support its construction of section 397, such reliance is unpersuasive. As the majority points out, those provisions containing additional terms requiring that objects be "fastened" or "mounted" use such additional terms to specify <u>where</u> in the vehicle the relevant object must be located (<u>see</u> <u>e.g.</u> <u>id.</u> §§ 375 [9], [48] [b]). Thus, such provisions are plainly distinguishable and are irrelevant to our analysis here.

The majority's construction of the statute arguably effectuates the general purpose of Vehicle and Traffic Law § 397 to the extent the legislature sought to curb the equipping of vehicles with scanners by individuals engaged in crime, who may have used the scanners to intercept police dispatches in the furtherance of illicit activities. Nevertheless, the majority's interpretation introduces significant ambiguity, rendering it difficult for the average person to determine what conduct is proscribed by section 397.

More importantly, courts may not, as a matter of statutory construction, broaden the scope of a statute beyond the words used by the legislature (<u>see</u> <u>People v Machado</u>, 90 NY2d 187, 192 [1997]). "'[T]he office of interpretation is to bring sense

out of the words used, and not bring a [different] sense into them'" (People v Graham, 55 NY2d 144, 152 [1982], quoting Meltzer v Koenigsberg, 302 NY 523, 525 [1951]).  Thus, the majority's claim that its interpretation effectuates a legislative purpose of the statute is misplaced, inasmuch as such an interpretation contravenes the plain language chosen by the legislature.  In addition, while the People claim that interpreting "equip" to require some inherent relationship -- physical or otherwise -- between the vehicle and the scanner would impair the effectiveness of the statute due to recent technological advances, the determination of whether the statute should be amended is a decision for the legislature, not the Court (see People v Kupprat, 6 NY2d 88, 90 [1959] ["We must read statutes as they are written and, if the consequence seems unwise, unreasonable or undesirable, the argument for change is to be addressed to the legislature, not to the courts"]; McKinney's Cons Laws of NY, Book 1, Statutes § 73 ["it is not for the courts to correct supposed errors, omissions or defects in legislation"]).  It is not the role of this Court to amend the statute, as the majority does, to prohibit the mere possession, use, or possession with intent to use, of a portable scanner in a motor vehicle.

In sum, I am of the view that the majority's expansive interpretation of the term "equip" in the statutory provision at issue here is inconsistent with its plain language and, in

effect, improperly amends and broadens the scope of the statute. At the very least, because we are presented with two plausible constructions of Vehicle and Traffic Law § 397, we should adopt the one more favorable to defendant (see People v Thompson, 26 NY3d 678, 687-688 [2016]; Golb, 23 NY3d at 468).  Therefore, I would reinstate Criminal Court's order dismissing the information.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

Order affirmed.  Opinion by Judge Rivera.  Chief Judge DiFiore and Judges Fahey, Garcia, Wilson and Feinman concur.  Judge Stein dissents in an opinion.

Decided October 24, 2017