People v Berrezueta (2018 NY Slip Op 04032)

People v Berrezueta

2018 NY Slip Op 04032 [31 NY3d 1091]

June 7, 2018

Court of Appeals

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, August 22, 2018

[*1]

The People of the State of New York, Respondent,
v
Steven Berrezueta, Appellant.

Decided June 7, 2018

People v Berrezueta, 55 Misc 3d 143(A), 2017 NY Slip Op 50633(U), affirmed.

APPEARANCES OF COUNSEL

Robert S. Dean, Center for Appellate Litigation, New York City (Siobhan Atkins of counsel), for appellant.
Cyrus R. Vance, Jr., District Attorney, New York City (Katherine Kulkarni and David M. Cohn of counsel), for respondent.

{**31 NY3d at 1092} OPINION OF THE COURT

Memorandum.
The order of the Appellate Term, insofar as appealed from, should be affirmed.
[1, 2] After defendant was found in possession of a switchblade knife at a subway station he was charged, among other things, with attempted criminal possession of a weapon in the fourth degree. Penal Law § 265.00 (4) defines a switchblade knife as "any knife which has a blade which opens automatically by hand pressure applied to a button, spring or other device in the handle of the knife." The weapon possession count of the accusatory instrument, as supported by nonhearsay allegations which gave defendant sufficient notice of the charged conduct to prepare a defense and avoid double jeopardy, was not jurisdictionally deficient. Moreover, the evidence presented at trial by the People, which included the police officer's testimony and his demonstration of the operability of the knife, was sufficient to support the factfinder's conclusion that the knife found on defendant's person met the statutory definition of a switchblade.

Rivera, J. (dissenting). Defendant Steven Berrezueta appeals from that portion of an order of the Appellate Term that{**31 NY3d at 1093} affirmed his conviction, after a nonjury trial, of attempted possession of a weapon in the fourth degree (Penal Law §§ 110.00, 265.01 [1]), specifically a switchblade (People v Berrezueta, 55 Misc 3d 143[A], 2017 NY Slip Op 50633[U] [App Term, 1st Dept 2017]).[FN1] Defendant was arrested for possession of a United States Army-themed knife, which he testified he bought online for use in the mailroom where he worked. The People do not dispute defendant's explanation or argue that he had a nefarious reason for possessing the knife.
Instead, the narrow issue presented on this appeal is whether the knife described in the accusatory instrument and at trial meets the statutory description for a per se weapon, one which is outlawed regardless of the defendant's reasons for possession. The majority holds that the accusatory instrument is jurisdictionally sound because the knife as described meets the statutory definition of a switchblade (majority mem; see Penal Law § 265.00 [4]). I disagree. Moreover, even if the majority were correct, the evidence at trial established that the knife in question was not a switchblade within the meaning of the Penal Law.
In the accusatory instrument, the arresting officer described the knife he found on defendant as having "a spring-loaded portion of the blade of the knife protruding from the handle of the knife." At trial, the officer testified that the spring mechanism was "in the blade." Neither description comports with the Penal Law definition of a switchblade: a knife whose blade opens automatically "by hand pressure applied to a button, spring or other device in the handle of the knife" (Penal Law § 265.00 [4]). Since we may not interpret the statutory language contrary to its express terminology, I would reverse defendant's conviction for attempted criminal possession of a weapon in the fourth degree.
I.
Defendant was on his way to work at the mailroom of an investment company when he was stopped and arrested at a New York City subway station; the arresting officer had{**31 NY3d at 1094} observed a knife protruding from defendant's rear pants' pocket. Defendant was initially charged by misdemeanor complaint with criminal possession of a weapon in the fourth degree (Penal Law § 265.01 [1]), and subsequently additionally charged by superseding information with [*2]possession of a knife worn outside of clothing (Administrative Code of City of NY § 10-133 [c]) and possession of a weapon or other dangerous instrument within the Transit Authority (21 NYCRR 1050.8 [a]).
The deponent arresting officer alleged in the superseding information:
"I observed a knife clipped to the defendant's rear right pants pocket so that I could see the entire clip and the head of the knife protruding from his pocket while the defendant was standing in the mezzanine area in the transit facility at the above location, a public place.
"I took a switchblade knife from the defendant's rear right pants pocket. The defendant is not law enforcement personnel and could not produce a valid license or permit to carry such knife.
"I know that the knife is in fact a switchblade knife based on my training and experience as a police officer and because, when I applied hand pressure to a spring-loaded portion of the blade of the knife protruding from the handle of the knife, the blade swung open automatically."
Defendant filed an omnibus motion, arguing, as relevant here, that the accusatory instrument was defective, since it failed to allege facts to support the elements of the charge and thus meet the facial sufficiency requirements of CPL 100.40. The knife described in the accusatory instrument, defendant argued, was not a switchblade as defined by the statute. After a suppression hearing, the court denied the motion and immediately proceeded to hold a bench trial.
The arresting officer was the People's sole witness. He testified that the knife was opened by "put[ting] pressure on the button, spring loaded inside, the spring opens the knife and locks the blade into place." The officer further testified that the button was "on the side of the knife," "[a]ttached to the blade," although at other times he stated that the button was "on the handle" and "not on the blade," and that to open the knife the {**31 NY3d at 1095}"thing you press" "moves to above the handle." The People also entered the knife into evidence, along with pictures of the knife in open and closed positions. The People concede that the button moved with the knife's blade away from the handle when the knife opened. In addition, the pictures of the knife admitted into evidence show that the button was on the blade, which, when the knife is closed, protrudes from the side of the handle. Flipping open and locking into place, the metal blade and the button on its surface remain separate from the handle when the knife is in use.
Defense counsel argued at the close of the People's case that the charges should be dismissed, since the knife opened by a button on the blade rather than in the handle, and thus the People had not established that the knife was a switchblade. The court denied the motion.
Defendant took the stand in his defense and testified that he had no criminal record and that he purchased the knife on a well-known website. He further testified that he used the knife exclusively for work, to open packages in his job in the mailroom, where he had worked for almost 12 years. He explained that he opened the knife like a box cutter "with the control of [his] thumb." He agreed that the knife could be opened by pressing the button, although, he added, "that method" would require that he "put enough force," and that he never maneuvered it in that way, instead "always us[ing] the knob."
Defense counsel again moved to dismiss, arguing that defendant's conduct fell within the Administrative Code's exception for those whose employment, trade or occupation customarily requires the use of such a knife. The court denied the motion, and convicted defendant of attempted criminal possession of a weapon in the fourth degree and possession of a weapon or dangerous instrument within the Transit Authority. After a bench conference, the People dismissed the remaining Administrative Code charge and the court sentenced defendant to time served.
The Appellate Term affirmed defendant's conviction (Berrezueta, 55 Misc 3d 143[A], 2017 NY Slip Op 50633[U]). The court concluded that the accusatory instrument was not jurisdictionally deficient, because "the weapon described possessed general features common to a switchblade so as to give defendant 'sufficient notice of the charged crime[s] to satisfy the demands of due process and double jeopardy' " (2017 NY Slip Op 50633[U], *1, quoting {**31 NY3d at 1096}People v Sans, 26 NY3d 13, 17 [2015]). The court also held the trial evidence was sufficient as it "established the operability of the switchblade at issue" based on the [*3]testimony of "[t]he arresting officer who tested the knife[,] described the manner in which it operated, and also demonstrated its operability in court" (id. at *2 [citation omitted]). A Judge of this Court granted defendant leave to appeal (People v Berrezueta, 30 NY3d 978 [2017]). On motion of the Court, the appeal was set for alternative review pursuant to Rules of the Court of Appeals (22 NYCRR) § 500.11, and the parties submitted their written submissions in compliance with that rule.
II.
Defendant claims that the accusatory instrument negates an element of the crime and thus is facially insufficient, as it states the activating button or device was on the knife's blade, rather than "in the handle of the knife" as required by the Penal Law's definition of a "switchblade knife." Defendant similarly argues that the evidence at trial was insufficient to establish that the knife found on his person was a switchblade, since while the knife introduced at trial and described in court opens by use of a pressure-sensitive device, that device is not located in the handle. I agree with the core of defendant's argument that the knife at issue is not a switchblade as defined by the Penal Law, because the knife opens upon pressure placed on the blade.
A. Per Se Weapon Switchblade Knife as Defined by the Penal Law
A "person is guilty of criminal possession of a weapon in the fourth degree when . . . [such person] possesses any . . . switchblade knife" (Penal Law § 265.01 [1]), which is defined as "any knife which has a blade which opens automatically by hand pressure applied to a button, spring or other device in the handle of the knife" (Penal Law § 265.00 [4]). The Court has consistently refused to rewrite or ignore statutory definitions of knives as enacted by the legislature (see e.g. Sans, 26 NY3d at 16; People v Dreyden, 15 NY3d 100, 103-104 [2010]). Instead, we look to the plain language to determine the legislative intent (see People v Golo, 26 NY3d 358, 361 [2015] ["(T)he clearest indicator of legislative intent is the statutory text, (and) the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof" (quoting {**31 NY3d at 1097}Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 583 [1998])]; see also People v Andujar, 30 NY3d 160, 169 [2017]). In the case of a switchblade, the statute requires that the "button, spring or other device" be located "in the handle of the knife" (Penal Law § 265.00 [4]). The legislature has thus specified this category of prohibited weapon by the physical mechanism that triggers the manner in which the knife opens, and "[t]he line is so drawn" (see People v Case, 42 NY2d 98, 102-103 [1977]).
If the legislature intended to exclude this definitional limitation on what constitutes a switchblade it knew how to do so, demonstrated by the fact that other definitions do not specify where an opening device must be located (see e.g. Penal Law §§ 265.06 [banning "spring-gun or other instrument or weapon in which the propelling force is a spring" on school grounds], 265.01, 265.00 [5] [prohibiting gravity knives, which lock into place by a "button, spring, lever or other device" in an unspecified location]). Indeed, this statute has been amended many times throughout the years to address advances in weaponry, and the legislature has chosen not to delete the requirement that the device to which pressure is applied must be in the handle portion of the knife:
"In 1909, the New York State legislature revised the Penal Code to create a comprehensive body of laws which comprised the new penal law. It sought to disarm criminals as a primary means of crime prevention, defining a handful of items as 'per se' weapons. . . . By 1930, the list of 'per se' weapons included the possession of 'a blackjack, slungshot, billy, sand club, sandbag, metal knuckles and bludgeon.' . . .
"In 1954 New York made selling or possessing a 'switchblade' a misdemeanor. A switchblade was defined as 'any knife which has a blade which opens automatically by hand pressure applied to a button, spring or other device in the handle of the knife' . . . An exception was carved out of the statute: possession of a switchblade knife was lawful if it was necessary for 'purposes of business, trade or profession, or for use while hunting, trapping and fishing,' with a license. . . . Two years later the law was amended, making it unlawful to possess a switchblade even if it was necessary [*4]for the possessor's employment . . . [because] although the {**31 NY3d at 1098}1954 statute 'has not been without effect, enforcement is made difficult by' the professional provision, and the defense 'goes far towards vitiating the statute.' . . .
"The 'gravity knife,' . . . was dubbed a 'legal' successor to the switchblade, since it contained the same basic characteristics as the switchblade, yet it circumvented the law because of the manner in which the blade was deployed" (United States v Irizarry, 509 F Supp 2d 198, 206-207 [ED NY 2007]).
We are bound by the chosen language and the apparent legislative intent to define this per se weapon by a distinct characteristic, to the exclusion of other knives. As we have repeatedly acknowledged, this Court may not rewrite the law, even to correct what may appear to be a defect in the legislation; that task is for the legislature, if, in the exercise of its lawmaking authority, it chooses to do so (see People v Kupprat, 6 NY2d 88, 90 [1959] ["(T)he argument for change (to a statute) is to be addressed to the Legislature, not to the courts"]; McKinney's Cons Laws of NY, Book 1, Statutes § 73, Comment ["(I)t is not for the courts to correct supposed errors, omissions or defects in legislation"]).
Moreover, a switchblade is a per se weapon, meaning neither proof of criminal intent nor knowledge of the illegality of the weapon is necessary for the People to establish guilt (see People v Parrilla, 27 NY3d 400, 404 [2016]). In construing per se weapon statutory sections, in which physically possessing a certain object is the only element of the crime, "we are mindful that Penal Law § 265.01 (1) should be interpreted narrowly in light of the absence of an intent element" (People v Ocasio, 28 NY3d 178, 182 [2016]).
Given that knives are staple tools found in the home and workplace, individuals may confuse a criminally-proscribed knife with a legally-acceptable one and mistakenly believe their possession to be lawful. While ignorance is no excuse under the law, we must be careful not to broaden the category of per se knives beyond the legislatively-adopted, definitional terms in violation of the legislative intent. In other words, judicial adherence to the exactitudes of a statutory definition—unquestionably mandated by our rules of statutory construction—is of paramount importance, given that the legislature has categorized possession of a switchblade knife as a strict liability{**31 NY3d at 1099} crime, meaning a defendant is criminally liable regardless of the reason for possession.
B. Sufficiency of the Accusatory Instrument
"The factual allegations of a misdemeanor complaint must establish 'reasonable cause' to believe that a defendant committed the charged offense" (People v McCain, 30 NY3d 1121, 1123 [2018], citing CPL 100.40 [4] [b]; see also People v Kalin, 12 NY3d 225, 228 [2009]). Reasonable cause "exists when evidence or information which appears reliable discloses facts or circumstances which are collectively of such weight and persuasiveness as to convince a person of ordinary intelligence, judgment and experience that it is reasonably likely that such offense was committed and that such person committed it" (CPL 70.10 [2]). An information must also meet the prima facie requirement that it "set forth nonhearsay allegations which, if true, establish every element of the offense charged and the defendant's commission thereof . . . . An information that does not satisfy this standard by failing to allege a complete element of the charged offense is jurisdictionally defective" (Kalin, 12 NY3d at 228-229 [internal quotation marks and citation omitted]; see also CPL 100.40 [1] [c]). Yet, "an accusatory instrument must be given a reasonable, not overly technical reading" (People v Konieczny, 2 NY3d 569, 576 [2004]; see also People v Casey, 95 NY2d 354 [2000]). The factual allegations of an information must always "give an accused notice sufficient to prepare a defense and [be] adequately detailed to prevent a defendant from being tried twice for the same offense" (Casey, 95 NY2d at 360).
Here, the accusatory instrument is facially insufficient because the description of the knife does not fit the statutory definition of a switchblade's appearance and working mechanism. By describing the pressure-sensitive device that opens the knife as located on the blade and not in the handle, and thereby characterizing the knife as other than a switchblade as defined by the statute, the instrument negates an element of the charged offense and as such failed to provide defendant with adequate notice of the crime charged.
[*5]
The People's reliance on Sans is misplaced. Sans involved a "gravity knife," which is defined by the way in which it functions: the blade is "released from the handle or sheath thereof by the force of gravity or the application of centrifugal force" and "when released, is locked in place by means of a button, spring, lever or other device" (Penal Law § 265.00 [5]). In Sans, {**31 NY3d at 1100}we held the factual allegations in an accusatory instrument were sufficient because they contained a police officer's statement "that he had 'observed the defendant remove a knife from the defendant's pocket, . . . recovered said knife from the defendant,' and 'tested the . . . knife and determined that it was a gravity knife, in that it opens with centrifugal force and locks automatically in place' " (26 NY3d at 15). That description of how the knife opened provided the defendant with adequate notice of the charged crime (26 NY3d at 17). The present case, in contrast, involves a knife that the People argue is a switchblade. Unlike a gravity knife, a switchblade is defined in the Penal Law not solely by how it operates, but by the appearance and location of the pressure-sensitive mechanism by which it opens. Thus, because the instrument's description of the knife in this case does not match the statutory physical characteristics, i.e. the knife described is something other than a switchblade, the instrument is facially insufficient.[FN2] Defendant's case is thus distinguishable from Sans due to differences in the statutory definitions, which must guide our analysis.
Nor do Ocasio or Andujar favor the People. In Ocasio, the Court interpreted the meaning of another per se weapon, a "billy," which is not defined in the Penal Law. The Court looked to that word's common meaning, its dictionary definition, and to the statutory provision's legislative history to discern the statute's proper construction (Ocasio, 28 NY3d at 181-184). In Andujar, we faced a similar question and followed the same analytical approach. The Court held that "[n]either the Vehicle and Traffic Law nor the Penal Law defines 'equips' or any derivation of that word. Absent a statutory definition we must give the term its ordinary and commonly understood meaning" (Andujar, 30 NY3d at 163 [internal quotation marks omitted], quoting Ocasio, 28 NY3d at 181). Unlike these cases, in which the law did not provide a definition for the operative term, here the Penal Law defines "switchblade," and we have no reason to look elsewhere for the meaning of this term. Since the knife as described in the accusatory instrument does not fit the statutory definition, the instrument is jurisdictionally defective.{**31 NY3d at 1101}
C. Sufficiency of the Trial Evidence
Even if the accusatory instrument survives defendant's jurisdictional challenge, the trial evidence was insufficient to establish that the knife in defendant's possession was a switchblade as defined by the Penal Law. The officer testified the button was "on the side of the knife" and "[a]ttached to the blade," while defendant testified he opened the knife like a box cutter, "with the control of [his] thumb." Indeed, the People concede, "the button was attached to the metal portion of the knife, and it moved with the blade, away from the handle, when the knife opened." Pictures of the knife introduced into evidence confirm that the activating button is on the blade, not "in the handle." Therefore, the evidence failed to establish that the knife "has a blade which opens automatically by hand pressure applied to a button, spring or other device in the handle of the knife" (Penal Law § 265.00 [4]). We may not ignore the statute's plain language; to do so would risk impermissibly expanding the statute's sweep beyond the legislative intent.
III.
The accusatory instrument describes the knife found on defendant as having "a spring-loaded portion of the blade of the knife protruding from the handle of the knife" and at trial the arresting officer testified that the spring mechanism was "in the blade." Neither description comports with the Penal Law definition of a switchblade as a knife whose [*6]blade opens automatically "by hand pressure applied to a button, spring or other device in the handle of the knife" (Penal Law § 265.00 [4]). A knife's blade and handle are two different entities, and no amount of legal finessing can change that simple fact. Indeed, the majority decision risks rendering irrelevant a defining characteristic of a switchblade knife as described in Penal Law § 265.00 (4)—the location of the triggering mechanism used to lock the knife into an open position. I dissent and would reverse defendant's conviction on the Penal Law count.
Chief Judge DiFiore and Judges Stein, Fahey, Garcia, Wilson and Feinman concur; Judge Rivera dissents in an opinion.
On review of submissions pursuant to section 500.11 of the Rules of the Court of Appeals (22 NYCRR 500.11), order insofar as appealed from affirmed, in a memorandum.

Footnotes

Footnote 1:Defendant does not appeal the Appellate Term order so far as it affirmed his conviction for possession of a weapon or other dangerous instrument within the Transit Authority (21 NYCRR 1050.8 [a]). Given that the majority has no occasion to consider whether a multiple count information may be dismissed when one count is found to have been insufficiently alleged, I limit my dissent to the sufficiency of the information's allegations and the trial evidence regarding the Penal Law count.

Footnote 2:In addition, Sans examined the sufficiency of a misdemeanor complaint, the allegations of which need not meet the higher standard applicable to an information (compare CPL 100.40 [1] [c] [the allegations must "establish, if true, every element of the offense charged and the defendant's commission thereof"], with CPL 100.40 [4] [b]; see also Kalin, 12 NY3d at 228).