# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision
before publication in the New York Reports.

No. 22
The People &c.,
   Respondent,
  v.
Jason Bohn,
   Appellant.

Mark W. Vorkink, for appellant.
Christopher Blira-Koessler, for respondent.

GARCIA, J.:

A jury convicted defendant of first-degree murder for killing a woman with whom

he had an extremely abusive relationship. Defendant claims the evidence was legally

insufficient to establish that he relished or took pleasure in the infliction of extreme

- 1 -

physical pain upon the victim so as to constitute "torture" under the first-degree murder statute. We disagree and affirm.

A verdict will be considered "legally sufficient when, viewing the facts in a light most favorable to the People, there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt" (*People v Danielson,* 9 NY3d 342, 349 [2007] [internal quotation marks and citations omitted]). Applying this standard, we conclude that there was sufficient proof for a rational jury to determine that defendant relished or took pleasure in the infliction of extreme pain.

A person who commits intentional murder "in the context of one or more of 13 aggravating factors" is guilty of first-degree murder (*see People v Cahill*, 2 NY3d 14, 57 [2003]; *see also* Penal Law § 125.27 [1]). Torture, the aggravating factor at issue here, requires that the defendant "[w]ith intent to cause the death of another person, [] causes the death of such person or of a third person; and . . . the defendant acted in an especially cruel and wanton manner pursuant to a course of conduct intended to inflict and inflicting torture upon the victim prior to the victim's death" (Penal Law § 125.27 [1] [a] [x]). The statute "requires a specific intent to inflict torture" (*William C. Donnino,* Practice Commentaries, Penal Law § 125.27 [1] [a] [x]), which is defined as "the intentional and depraved infliction of extreme physical pain" (Penal Law § 125.27 [1] [a] [x]). To establish depravity, the evidence must demonstrate that "the defendant relished the infliction of extreme physical pain upon the victim evidencing debasement or perversion or that the defendant evidenced a sense of pleasure in the infliction of extreme physical pain" (*id.*). It is proof of this last

element—that the defendant relished or took pleasure in inflicting extreme pain upon the victim—that defendant argues was insufficient.

The Penal Law does not define the terms "relish" or "pleasure." Black's Law Dictionary defines "pleasure" as "an agreeable sensation," "mental gratification," or "something that one desires or chooses" (Black's Law Dictionary [11th ed 2019]). "Relish" is similarly defined as "a strong liking," or "enjoyment of or delight in something that satisfies one's tastes, inclinations, or desires" (Merriam-Webster Online Dictionary, relish [http://www.merriam-webster.com/dictionary/relish]). With those dictionary definitions serving as "useful guideposts" (*People v Ocasio,* 28 NY3d 178, 181 [2016] [internal quotation marks and citations omitted]), we turn to the record here.

The People's proof with respect to this element of the crime fell into three general categories: defendant's threats and other abusive conduct toward the victim in the period before the murder; the events that took place that night, including a voicemail that inadvertently recorded the crime; and the medical examiner's testimony about the nature and extent of the victim's injuries. This evidence, particularly the audio recording of a portion of the attack during which the jury could hear the victim being repeatedly choked and taunted by defendant and the medical testimony about the pain these injuries would have caused, was sufficient to allow a rational jury to conclude beyond a reasonable doubt that defendant relished or took pleasure in the infliction of extreme pain upon the victim.

Evidence in the first category established that several weeks before her death, the victim reported defendant to the police. She arrived at the precinct limping, with large bruises on her body and "visible red marks on her face." She showed officers graphic and

threatening emails sent by defendant earlier that day in which defendant described in detail the ways he would sexually assault her as a "penalty" for lying and warned her that if she did not obey him, he would "respond with a fury that satan himself would envy."  While the victim was at the precinct, defendant called her, and the officers listened in as defendant threatened to "dedicate [his] life to hunting [her] down like a dog on the street."

The jury also heard evidence of defendant's actions on the night of the murder, including a nearly three-minute-long audio recording of defendant repeatedly strangling the victim.  That night, less than three weeks after she went to the precinct, the victim called 911.  A recording of that emergency call was played for the jury.  Although she is unable to speak to the operator, the victim can be heard begging defendant to let her out of the apartment and screaming in pain.  Almost one hour later, the victim's phone dialed a friend's telephone number and the call went to voicemail.  On that recording, which demonstrates that the attack was still ongoing, defendant is heard mocking the victim and telling her that she did not "have a lot of time" left.  He repeatedly asked her why she called a certain number and told her that her responses were "probably good enough" and that he "believe[d]" her.  He nevertheless continued to attack her.  As defendant demanded that the victim "listen" to him, she told him that she was "choking," and that she could no longer breathe.  Defendant asked her, "how does it feel?"  Though still choking, the victim managed to tell defendant that she loved him and that she could not breathe while begging for help.  Defendant can be heard telling her she had "five seconds" before he killed her and that this was her "fault."  Towards the end of the recording, defendant told the victim once more that she had "five seconds" and that he would "let" her get up to provide a

sufficient answer "or else you die." She is again heard screaming and choking. At that point, her voice trails off and her responses become unintelligible before the call ends. Two days later, police discovered the victim's badly bruised body in her bathtub.

The medical examiner who performed the autopsy testified that the victim's cause of death was blunt force trauma to her torso and compression of her neck, each "potentially a set of fatal injuries." Many of her ribs and her sternum were fractured in a manner consistent with being "stomped" with "a significant amount of force" and were likely caused by "multiple impacts" to the front, back, and side of her body. Those fractures caused contusions to her lungs and lacerations to her liver, which in turn caused her to bleed internally, resulting in a loss of "nearly one third her total blood circulating volume." The testimony also showed that defendant used his hands to fatally strangle the victim with such force that he fractured the cartilage in her upper trachea and caused deep hemorrhaging in various muscles in her neck. "[A] good amount of pressure on the neck" would need to be applied to cause those injuries and it would take "about five or six minutes…to strangle somebody before the brain irreversibl[y] loses the ability to function." The medical examiner testified that given the "nerve endings" in that location, it would be "a very painful experience" to be repeatedly strangled almost to the point of unconsciousness.

Given defendant's prior statements of intent to harm the victim, the audio recording of his statements and conduct as he repeatedly taunted and strangled the victim, and the numerous painful and ultimately fatal injuries the victim sustained, the evidence was sufficient to establish that defendant had the requisite intent to inflict torture, did so, and

experienced enjoyment from it.  The jury heard defendant's graphic threats to sexually assault and "hunt" the victim down and his statement that he would enjoy doing so. Moreover, the manner in which defendant conducted the prolonged assault resulting in the victim's death, including repeatedly asking the victim how it felt as he choked her, gave her a brief reprieve, and then strangled her again, provided evidence from which the jury could conclude that he derived "mental gratification" from inflicting extreme pain upon the victim (*see Valdez-Cruz v Racette,* 2014 WL 3795577 [ED NY August 1, 2014, No. 13-CV-03033 (JFB)]).

We reject defendant's argument that he acted only out of anger or a desire to get information from the victim.  As this Court has made clear, where the requisite motivation is at least a "substantial factor" in the murder, the statute is satisfied, even if the defendant "may have had mixed motives" (*Cahill*, 2 NY3d at 57; *see also Williams v Lempke*, 2012 WL 2086955, *19 [SD NY June 1, 2012, No. 11 Civ 2504 (PGG/JLC)], *report and recommendation adopted by* 2014 WL 5035219 [SD NY Sept 29, 2014] [analyzing Penal Law § 125.27 (1) (a) (x) and holding that even if the jury found that "the assaults were partially motivated by fury and/or the 'rational' goal of preventing the victim from later identifying him, it would not preclude a finding that (the defendant) *also* relished inflicting extreme pain on the victim, of which there was substantial evidence"]).  Certainly, the goal of extracting information is not incompatible with relishing the infliction of extreme pain, and proof that a defendant acted out of anger in harming the victim does not preclude the jury from finding that defendant took pleasure in doing so.  Here, defendant is heard on the recording continuing to attack the victim even after stating that her response was "good

enough." On this record, there was sufficient evidence for the jury to find that while defendant may have also acted in anger or sought information from the victim, taking pleasure in inflicting extreme pain upon her was a substantial motivation.

In sum, there is a valid line of reasoning from which the jury could have determined that the People established that defendant relished or took pleasure in inflicting extreme pain upon the victim. We have considered defendant's remaining contentions and find them to be without merit. The order of the Appellate Division should be affirmed.

Order affirmed. Opinion by Judge Garcia. Chief Judge Wilson and Judges Rivera, Singas, Cannataro, Troutman and Halligan concur.

Decided March 19, 2024