*190 OPINION OF THE COURT
Pigott, J.
New York City adopted lead abatement legislation in 1982 that imposes a duty on landlords to remove lead-based paint in any dwelling unit in which a child six years of age and under resides (see Administrative Code of City of NY former §27-2013 [h] [1], as added by Local Law No. 1 [1982] of City of NY). The issue in this case is whether a child “reside [s]” in an apartment containing lead-based paint, thereby triggering a landlord’s duty under Local Law 1, when the child does not live in the apartment but spends approximately 50 hours per week there with a caregiver.
I.
Plaintiff Yaniveth R. was born in January 1997. She lived with her father and mother, plaintiff Ramona S., in an apartment in the Bronx from early 1997 until 2002. Yaniveth’s paternal grandmother lived nearby on the first floor of an apartment building owned by defendants LTD Realty Co. and LTD Realty Co., LLC. When Yaniveth was three months old, her grandmother began watching her five days a week at her apartment, from approximately 9:30 a.m. until 6:30 or 7:00 p.m., while Yaniveth’s parents were at work. Yaniveth returned to her parents’ apartment each evening, where she lived with her mother, father and older sister. According to both Ramona and Yaniveth’s grandmother, Yaniveth did not live with the grandmother — she lived only at her parents’ apartment.
In January 1998, Yaniveth was found to have an elevated blood lead level. The New York City Department of Health identified hazardous lead-paint conditions at the grandmother’s apartment and issued defendants an order to abate.
In 2006, Ramona commenced this negligence action individually and on Yaniveth’s behalf against defendants and related individuals. Plaintiffs alleged that, because Yaniveth “spent a significant amount of time” in her grandmother’s apartment, defendants owed her a duty to abate the apartment of hazardous lead-paint conditions pursuant to former section 27-2013 (h) (1) of the Administrative Code, and that their failure to do so caused plaintiffs’ injuries. Former section 27-2013 (h) provides:
“The owner of a multiple dwelling shall remove or cover in a manner approved by the department any *191 paint or other similar surface!-]coating material having a reading of 0.7 milligrams of lead per square centimeter or greater or containing more than 0.5 percent of metallic lead based on the nonvolatile content of the paint or other similar surface-coating material on the interior walls, ceilings, doors, window sills or moldings in any dwelling unit in which a child or children six (6) years of age and under reside” (Administrative Code former § 27-2013 [h] [l]).[1]
Defendants moved for summary judgment, arguing that, under Local Law 1, they owed no duty to remove lead-based paint from the grandmother’s apartment because Yaniveth did not “reside” there. In the absence of a duty, defendants claimed, there can be no negligence.
Supreme Court granted defendants’ motion and dismissed the complaint. The Appellate Division unanimously affirmed, holding that defendants established prima facie that while the infant plaintiff was cared for at the apartment, during the day, she resided elsewhere, with her parents, and that “plaintiffs failed to raise an issue of fact as to the infant’s residence” (120 AD3d 1142, 1142 [1st Dept 2014]). We granted plaintiffs leave to appeal (24 NY3d 912 [2014]) and now affirm.
II
“[A] landlord may be held liable for injury caused by a defective or dangerous condition upon the leased premises if the landlord is under a statutory or contractual duty to maintain the premises in repair” (Juarez v Wavecrest Mgt. Team, 88 NY2d 628, 642-643 [1996]). Local Law 1 imposes such a duty, requiring landlords to “remove or cover” lead-based paint “in any dwelling unit in which a child or children six (6) years of age and under reside” (Administrative Code former § 27-2013 [h] [1] [emphasis added]).
This appeal turns on the meaning of the word “reside.” Plaintiffs contend that we should interpret the term as broadly *192 as possible, to include places in which a child is physically present or spends a substantial amount of time. By that definition, plaintiffs claim Yaniveth “reside [d]” in her grandmother’s apartment and therefore Local Law 1 required defendants to abate the premises of lead-based paint. If, however, the word “reside” requires something more than mere physical presence in a place (as the courts below determined), then Yaniveth did not “reside” in her grandmother’s apartment, defendants did not owe a duty under the statute and plaintiffs’ negligence claim must fail (see Juarez, 88 NY2d at 647; Rivera v Nelson Realty, LLC, 7 NY3d 530, 534-535 [2006] [dismissing plaintiff’s complaint where neither the common law nor any statute imposed a duty on landlords to cover radiators in apartments in which young children live]).
Local Law 1 does not define the word “reside.” In the absence of a statutory definition, “we construe words of ordinary import with their usual and commonly understood meaning, and in that connection have regarded dictionary definitions as useful guideposts in determining the meaning of a word or phrase” (Rosner v Metropolitan Prop. & Liab. Ins. Co., 96 NY2d 475, 479-480 [2001] [internal quotation marks omitted]; see also Matter of Orens v Novello, 99 NY2d 180, 185-186 [2002] [relying on Merriam-Webster’s and Black’s Law Dictionary to ascertain the meaning of the term “lay member” in Public Health Law § 230 (6)]).
Dictionaries from the relevant time period define “reside” as “to dwell permanently or continuously: occupy a place as one’s legal domicile” (Merriam-Webster’s New Collegiate Dictionary 1003 [9th ed 1986]) and “[to] have a settled abode for a time: have one’s residence or domicile” (Webster’s Third New International Dictionary, Unabridged 1931 [Merriam-Webster 1981]). According to Webster’s Third, “reside” is the “preferred term for expressing the idea that a person keeps or returns to a particular dwelling place as his fixed, settled, or legal abode” (id.).[2] Black’s Law Dictionary notes that “residence” “is made up of fact and intention, the fact of abode and the intention of remaining, and is a combination of acts and intention. Residence implies something more than mere physical pres *193 ence and something less than domicile” (Black’s Law Dictionary 1176 [5th ed 1979] [citation omitted]).
This understanding of the term “reside” is consistent with the rule we set out in Matter of Newcomb (192 NY 238 [1908]). Although plaintiffs cite Newcomb for the proposition that “[residence simply requires bodily presence as an inhabitant in a given place, while domicile requires bodily presence in that place and also an intention to make it one’s domicile” (id. at 250), our opinion made clear that “Residence means living in a particular locality,” even if a person does not intend to make that place a “fixed and permanent home,” i.e., a domicile {id. [emphasis added]). As we stated more recently, a person’s “residence” entails “something more than temporary or physical presence,” with some “degree of permanence and [an] intention to remain” (Dean v Tower Ins. Co. of N.Y., 19 NY3d 704, 708 [2012]). Thus, “[although it is true that a person may have more than one residence [,] ... to consider a place as such, he must stay there for some length of time and have the bona fide intent to retain the place as a residence with at least some degree of permanency” (Hammerman v Louis Watch Co., 7 AD2d 817, 818 [3d Dept 1958]; see also Katz v Siroty, 62 AD2d 1011, 1012 [2d Dept 1978] [holding that plaintiff did not establish a second residence at his sister’s apartment in Manhattan even though he kept a room there and occasionally stayed overnight for business because, citing the rule in Ham-merman, he did not “have the bona fide intent to retain the place as a residence for some length of time and with some degree of permanency”]).
Nothing in the legislative history of Local Law 1 suggests that the City Council meant anything other than this understanding of the term “reside.” We presume the City was familiar with the common meaning and usage of the words it used as well as existing decisional law (cf. Matter of Knight-Ridder Broadcasting v Greenberg, 70 NY2d 151, 157 [1987]), which, in this case, understood residence as something more than physical presence but something less than domicile— living in a particular place with the intent to retain it as a residence (see Newcomb, 192 NY at 250; Hammerman, 7 AD2d at 818). Had the City intended to expand the meaning of the word “reside” to include children who do not actually live in an apartment but spend significant amounts of time there, it could have used words to that effect (see Orens, 99 NY2d at 187).
Applying these principles of statutory construction to Local Law 1, we agree with the courts below that Yaniveth did not *194 “reside” in her grandmother’s apartment. Both Ramona and Yaniveth’s grandmother testified that Yaniveth did not live at the apartment, and there is no evidence in the record that they intended for her to live there or to retain the apartment as a residence. Yaniveth visited her grandmother’s apartment during the day solely for the purpose of child care, while her parents were at work. Although a person may reside at more than one location, spending 50 hours per week in an apartment with a noncustodial caregiver is insufficient to impose liability on a landlord under Local Law 1.
Contrary to the dissent’s assertion, we do not “eliminate [ ] the distinction between ‘residence’ and ‘domicile’ ” or “effectively meant ] that a child may have only one ‘residence’ ” under Local Law 1 (dissenting op at 197). We agree that a person may reside in more than one place, but that does not mean that every place in which a person spends time constitutes a residence. The question of whether a person “reside [s]” in a given location is a fact-driven inquiry that depends on the totality of the circumstances, and although there is no question of fact in this case that Yaniveth did not reside in her grandmother’s apartment, there are a number of situations in which a child may reside in more than one apartment, such as in a joint custody situation or other shared living arrangement.
The courts below properly concluded that defendants were entitled to summary judgment and that plaintiffs’ claim, alleging violations of Local Law 1, was properly dismissed. To the extent plaintiffs also alleged a breach of defendants’ contractual duty to repair the premises based on traditional common-law principles, that claim too must fail (see Chapman v Silber, 97 NY2d 9, 15 [2001] [holding that a plaintiff must show the landlord “knew that a young child lived in the apartment” to survive a defendant landlord’s motion for summary judgment in a lead paint poisoning case based on traditional common-law principles and a landlord’s contractual duty to repair]).
Accordingly, the order of the Appellate Division should be affirmed, with costs.

. Section 27-2013 (h) was subsequently repealed by the New York City Childhood Lead Poisoning Prevention Act of 2003 (Local Law No. 1 [2004] of City of NY) and transferred to sections 27-2056.1 et seq. of the Administrative Code. The parties agree that the version of Local Law 1 enacted in 1982 was in force during Yaniveth’s exposure and applies to plaintiffs’ claim. Unless otherwise noted, “Local Law 1” as used in this opinion refers to Local Law 1 of 1982.

. Although dictionary definitions that equate “residence” with “domicile” fail to recognize the legal distinction we have drawn between those terms, they are a useful tool of statutory construction to the extent that they reflect the common meaning and usage of the term “reside” at the time the City Council enacted Local Law 1.