Cotillis v New York Cent. Mut. Fire Ins. Co. (2018 NY Slip Op 01234)





Cotillis v New York Cent. Mut. Fire Ins. Co.


2018 NY Slip Op 01234


Decided on February 22, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 22, 2018

524846

[*1]DELORES M. COTILLIS, Respondent,
v
NEW YORK CENTRAL MUTUAL FIRE INSURANCE COMPANY, Appellant.

Calendar Date: January 10, 2018

Before: McCarthy, J.P., Devine, Aarons, Rumsey and Pritzker, JJ.


Law Office of Keith D. Miller, Liverpool (Keith D. Miller of counsel), for appellant.
Lynn Law Firm, LLP, Syracuse (Martin A. Lynn of counsel), for respondent.


Aarons, J.

MEMORANDUM AND ORDER
Appeals (1) from an order of the Supreme Court (Reynolds Fitzgerald, J.), entered January 11, 2017 in Broome County, which denied defendant's motion to set aside the verdict, and (2) from a judgment of said court, entered January 19, 2017 in Broome County, upon a verdict rendered in favor of plaintiff.
In September 2013, a fire damaged a house (hereinafter the insured premises) owned by plaintiff in the City of Binghamton, Broome County. The insured premises was a two-family house wherein plaintiff lived in the top-floor unit, and the first-floor unit was used as rental property. At the time of the fire, the insured premises was insured under a homeowner's insurance policy issued by defendant to plaintiff. Plaintiff claimed a
loss under the policy, but defendant disclaimed coverage on the basis that plaintiff did not reside at the insured premises on the date of loss. Following a trial, the jury found that plaintiff was a resident of the insured premises and awarded damages of $163,938.94 for the structured dwelling, $7,873,02 for personal property and $39,600 for additional living expenses. Defendant thereafter moved under CPLR 4404 to set aside the verdict. In January 2017, Supreme Court denied the motion. A judgment was subsequently entered upon the verdict in favor of plaintiff. These appeals by defendant ensued.
We reject defendant's assertion that the evidence was legally insufficient for the jury to conclude that plaintiff was a resident of the insured premises at the time of the loss (see generally Cohen v Hallmark Cards, Inc., 45 NY2d 493, 499 [1978]). The insurance policy at issue provides coverage to a dwelling on the "residence premises." As relevant here, "residence [*2]premises" is defined as "[t]he two, three or four family dwelling where you reside in at least one of the family units." The policy, however, does not define "reside" and, therefore, "[t]he standard for determining residency for purposes of insurance coverage requires something more than temporary or physical presence and requires at least some degree of permanence and intention to remain" (Dean v Tower Ins. Co. of N.Y., 19 NY3d 704, 708 [2012] [internal quotation marks and citations omitted]; see Sosenko v Allstate Ins. Co., 155 AD3d 1482, 1482 [2017]; Fiore Excelsior Ins., 276 AD2d 895, 896 [2000], lv dismissed [96 NY2d 755 [2001]). Whether a person resides in any particular location is generally a fact-based determination (see Yaniveth R. v LTD Realty Co., 27 NY3d 186, 194 [2016]).
At trial, plaintiff's daughter-in-law testified that she and her husband, plaintiff's son, approached plaintiff to see if she could watch their daughter, plaintiff's granddaughter, during the day. The daughter-in-law stated that plaintiff agreed to so "as long as it was temporary." As such, starting in April 2013, plaintiff stayed at her son's house and babysat her granddaughter in the morning. Aside from a bed and a dresser, plaintiff did not bring other household furnishings from the insured premises to her son's house. Approximately two or three times a week, when the daughter-in-law returned early from work, she would take plaintiff to the insured premises where plaintiff would check the mail and perform household chores. Plaintiff testified that she ate meals at the insured premises, stayed at the insured premises during some weekends, did not change her mailing address from the insured premises and planned to return there after her son stopped working. Plaintiff also testified that she considered the insured premises her home. Furthermore, the fire investigator who testified on behalf of defendant stated that his inspection of the unit where plaintiff lived contained items and furnishings indicative of a person living there. In our view, the foregoing proof was sufficient to establish that plaintiff's stay at her son's house was temporary in nature (see New York Cent. Mut. Fire Ins. Co. v Kowalski, 222 AD2d 859, 861 [1995]) and that she was a resident of the insured premises at the time of the loss.
Defendant also takes issue with part of the $163,938.94 damages awarded for the structured dwelling. In particular, defendant argues that the amount awarded for the demolition of the insured premises should have been $16,400 and not $28,900, because the latter figure, as testified to by an insurance adjuster, took into account asbestos control. We disagree. In support of its argument, defendant relies on the pollution-exclusion clause in the policy. According to the exclusion's terms, coverage is not provided for a loss "caused directly or indirectly" by an ordinance or law requiring an insured, such as plaintiff, "to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants." Even assuming that "pollutants" in the policy at issue encompassed asbestos, the record does not demonstrate that asbestos directly or indirectly caused the loss. Accordingly, we find that defendant failed to show that the exclusion clause for pollutants applied to avoid coverage (see generally Seaboard Sur. Co. v Gillette Co., 64 NY2d 304, 311 [1984]).
We are, however, persuaded by defendant's contention that the $39,600 damage award for additional living expenses should be reduced. In awarding that amount, the jury apparently credited the testimony of the insurance adjustor who was called as a witness by plaintiff. The adjustor testified that lost rental income was factored into his additional living expenses calculation and opined that each unit had a rental value of $550 per month. Plaintiff similarly testified that she had rented the first-floor unit for this amount and that she had planned to show the unit to a prospective tenant but for the fire. Accordingly, the record supports a lost rental income award for the first-floor unit of $550 per month, or $19,800 over a period of three years.
Plaintiff, however, recognizes on appeal that the first-floor unit was to be used as a unit for rent and the other one was utilized as her home. The adjustor likewise admitted that plaintiff [*3]only received rental income from the first-floor unit because she hoped to live in the other unit. Given that the trial evidence establishes that plaintiff intended to derive rental income from only one unit, the damages award for additional living expenses should be reduced by $19,800. To the extent that the jury awarded this amount for monies expended by plaintiff for alternative housing, plaintiff failed to establish that she "incurred" any such expenses as required under the policy. In view of the foregoing, the amount of $39,600 awarded by the jury for additional living expenses must be reduced by $19,800.
McCarthy, J.P., Devine, Rumsey and Pritzker, JJ., concur.
ORDERED that the order and judgment are modified, on the facts, without costs, by reducing the award for additional living expenses to $19,800, and, as so modified, affirmed.