Fisch v Davidson (2022 NY Slip Op 01442)





Fisch v Davidson


2022 NY Slip Op 01442


Decided on March 9, 2022


Appellate Division, Second Department


Lasalle, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 9, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

HECTOR D. LASALLE, P.J.
FRANCESCA E. CONNOLLY
ANGELA G. IANNACCI
PAUL WOOTEN, JJ.


2021-00155
 (Index No. 610414/20)

[*1]Mark Fisch, respondent,
v
Rachel N. Davidson, appellant.



APPEAL by the defendant, in an action for a divorce and ancillary relief, from an order of the Supreme Court (Marian Rose Tinari, J.), dated December 21, 2020, and entered in Suffolk County. The order denied the defendant's motion pursuant to CPLR 510 and 511 to change the venue of the action from Suffolk County to New York County.



Bronstein Van Veen LLC, New York, NY (Peter E. Bronstein and Meredith L. Strauss of counsel), for appellant.
Chemtob Moss Forman & Beyda, LLP, New York, NY (Nancy Chemtob, Joshua Forman, and Alexis Wolf of counsel), for respondent.



LASALLE, P.J.


OPINION & ORDER
Introduction
The parties to this divorce action primarily resided in New York County, while maintaining a seasonal second home in Suffolk County. In March 2020, when the COVID-19 pandemic first reached New York City, the defendant retreated to the Suffolk County residence along with her pregnant and immunocompromised daughter and began spending more time there in order to assist the daughter during the pregnancy and after the child's birth. In August 2020, the plaintiff commenced this action for a divorce and ancillary relief in Suffolk County, on the ground that the parties were residents of Suffolk County. The defendant moved pursuant to CPLR 510 and 511 for a change of venue, and the Supreme Court denied the motion.
This case presents the issue of whether sheltering in place in a seasonal home creates a sufficient degree of permanence to establish residency at that location. We hold that it does not under the circumstances of this case. Because the parties' stays in Suffolk County were only seasonal and temporary, we hold that neither of them were residents of Suffolk County at the time of the commencement of the action. Accordingly, the Supreme Court should have granted the defendant's motion pursuant to CPLR 510 and 511 to change the venue of the action from Suffolk County to New York County.
Factual and Procedural Background
The parties met while attending Columbia Law School and were married in 1985. After graduating law school, they moved to New Jersey, where they raised their three daughters. The defendant ultimately became a Superior Court Judge in Newark, while the plaintiff is a real estate developer with an office in Manhattan as well as a trustee of the Metropolitan Museum of Art and the chairman of that museum's Acquisitions Committee.
Beginning in the late 1990s, the parties rented an apartment on the Upper West Side as a pied-a-terre. In 2010, the parties purchased an apartment at the Beresford, located at 81st Street and Central Park West in Manhattan. After the parties' youngest daughter graduated high school in 2011 and after the defendant retired in 2013, the parties spent increasing amounts of time at the Beresford and less time at their New Jersey residence. Beginning in 2014, the parties filed tax returns showing that they resided in New York City and paid New York City income taxes. In 2014, the parties contracted to buy a second apartment at the Beresford, with the plan of combining the two units into one large duplex apartment, measuring more than 4,700 square feet, with four bedrooms. The cost of that renovation is projected to be more than $8 million. The contract called for title to the second apartment to transfer upon the death of the owner of the second apartment, and the parties closed on the second apartment in 2018. According to the defendant, after the parties separated in April 2019, the plaintiff began renting an apartment near East 79th Street and Fifth Avenue in Manhattan. The parties sold their New Jersey residence in 2020. The entirety of the parties' collection of Old Master paintings, insured at $177 million, hangs at the Beresford apartment or the plaintiff's apartment in New York City, except for one painting that has been consigned for auction.
Meanwhile, in 2012, the parties purchased property in Southampton. In 2016, the parties demolished the existing house on the property and built a new house that cost more than $4 million. During a portion of the construction, the parties rented another house in Southampton. According to the defendant, the parties only used the Southampton house for summer weekends, with limited exceptions. The defendant explained:
"For most summers beginning in 2013, some combination of [the plaintiff], [the defendant], and our three daughters would use the house on weekends. Some weekends the kids went without us. For example, [the plaintiff] always traveled to London for Old Master Week in early July. Some summers, the family used the house less often. In 2016 we did construction on the house and took a summer rental, which I hardly saw as I spent most of that summer in Los Angeles taking care of my father, who had suffered a stroke. In July 2017 our oldest daughter had surgery, resulting in missed weekends. In the summer of 2018, one of our daughters got married and my father suffered another stroke, so again the house was used less often. Until our separation, the only time [the plaintiff] and I stayed in the Southampton house outside of the summer season was a few days over the Christmas holiday break in 2018."
When the COVID-19 pandemic reached New York in March 2020, the defendant and the parties' oldest daughter, Elizabeth, retreated to the Southampton house from their respective apartments in Manhattan. According to the defendant:
"Elizabeth was pregnant with her first child — our first grandchild — and is immunocompromised due to a medication she takes to treat Crohn's disease. She and I and her husband felt that staying in the house would be safer for her — and, ultimately, for the baby after his birth because he would also be immunocompromised for his first six months until her medication was out of his system — than remaining in the City. Her husband had been exposed to family members of his who had contracted Covid-19, so after he quarantined for three weeks in their Manhattan apartment, he joined us at the Southampton house. I then left the Southampton house on April 5, and except for spending our last Passover holiday with my other children in our New Jersey home (which has since sold), I remained in my Manhattan apartment from April 5 until May 28, when I returned to Southampton to help Elizabeth who was then in the late stages of pregnancy. Throughout, Elizabeth drove back to Manhattan for all of her doctors' appointments between March and the birth in June.
* * *
"When our daughter went into labor on June 11, I drove her and her husband to Manhattan, where she gave birth. I returned to my New York City apartment and was in the City to help her after the baby was born. I stayed in New York City for about a week and a half. Later, we all returned to Southampton, where our other two [*2]daughters and their husbands, having completed a strict two-week quarantine, joined us.
"Despite [the plaintiff's] knowingly false claim that I reside in Southampton, my stay here is so impermanent that [the plaintiff] has thought nothing of booting me out at will. On July 26, [the plaintiff] announced by text that he would be coming to the Southampton house for a week from September 9 through 16. He understood that, in addition to my leaving, my oldest daughter, her husband, their baby, my youngest daughter and her husband would also all have to leave in order to avoid being exposed to him."
On August 11, 2020, the plaintiff commenced this action against the defendant in the Supreme Court, Suffolk County. In the complaint, the plaintiff sought a judgment of divorce that declared the separate property of the parties, equitably distributed the marital assets and debt, and awarded the Southampton house to the plaintiff. On or about September 2, 2020, the defendant served a demand to change the venue of the action to New York County on the ground that Suffolk County was an improper venue.
By notice of motion dated September 10, 2020, the defendant moved pursuant to CPLR 510 and 511 to change the venue of the action from Suffolk County to New York County. The defendant contended that Suffolk County was an improper venue because the parties' primary, permanent residence was in New York County and that although the parties owned a summer house in Southampton, neither party resided there on the date of the commencement of the action with the requisite degree of permanence. The defendant further contended that Suffolk County would be inconvenient for the testifying witnesses in the case, as none of the witnesses lived in Suffolk County and the assets themselves, except for the vacation house, were all located elsewhere.
The plaintiff opposed the defendant's motion, arguing that the parties did reside at the house in Southampton and that the defendant failed to demonstrate that the convenience of material witnesses and the ends of justice would be promoted by a change in venue to New York County.
The Supreme Court denied the defendant's motion to change the venue of the action from Suffolk County to New York County. The court concluded that Suffolk County was a proper venue pursuant to CPLR 503(a) and 510(1) because the defendant was a resident of Suffolk County. The court further concluded that the defendant did not establish her entitlement to a discretionary change of venue pursuant to CPLR 510(3) because she failed to demonstrate that the convenience of material witnesses and the ends of justice would be promoted by the change. The defendant appeals.
Analysis
CPLR 510(1) provides that the court, upon motion, may change the place of trial of an action where "the county designated for that purpose is not a proper county." CPLR 503(a) provides that except where otherwise prescribed by law, "the place of trial shall be in the county in which one of the parties resided when it was commenced" (emphasis added).
The requirement that the venue of an action shall be predicated on where a party resided when the action was commenced has been present in the CPLR and its predecessor statute for more than 100 years (see Civ Prac Act § 182). However, the term "resided" has never been defined in those statutes. Accordingly, courts applying the statutes have applied the common-law definition of "resided," which has developed over time on a case-by-case basis (see e.g. Katz v Siroty, 62 AD2d 1011, 1012; Hammerman v Louis Watch Co., 7 AD2d 817, 818).
The leading Court of Appeals case on the issue of the meaning of "reside" is Yaniveth R. v LTD Realty Co. (27 NY3d 186), which involved a New York City ordinance requiring landlords to remove lead-based paint in any dwelling unit in which a child six years of age and under "reside[d]" (id. at 191 [internal quotation marks omitted]). In that case, the Court of Appeals concluded that a child who did not live in the subject apartment but spent approximately 50 hours per week there with a caregiver did not "reside" in the apartment (see id. at 194). In doing so, the Court of Appeals reviewed, among other things, venue cases interpreting CPLR 503(a) and its predecessor, and synthesized from them the following definition of "residence":
"[r]esidence means living in a particular locality, even if a person does not intend to make that place a fixed and permanent home, i.e., a domicile. . . . [A] person's [*3]'residence' entails something more than temporary or physical presence, with some degree of permanence and [an] intention to remain. Thus, [a]lthough it is true that a person may have more than one residence[,] . . . to consider a place as such, he [or she] must stay there for some length of time and have the bona fide intent to retain the place as a residence with at least some degree of permanency" (id. at 193 [emphasis, citations, and internal quotation marks omitted]; see Dean v Tower Ins. Co. of N.Y., 19 NY3d 704, 708; Matter of Newcomb, 192 NY 238; Kelly v Karsenty, 117 AD3d 912).
This Court has held that "[r]esidence requires more stability than a brief sojourn for business, social or recreational activities" (Katz v Siroty, 62 AD2d at 1012). Thus, in Doe v Hall (36 AD3d 651), this Court held that the affidavit of the plaintiff's son, who stated that at the time of the commencement of the action the plaintiff maintained a residence at her son's apartment in Queens County and would "reside" there when she came back to Queens County during holidays and other times, was insufficient to establish that the plaintiff resided in Queens County at the time the action was commenced (id. at 652 [internal quotation marks omitted]). Similarly, in Stern v Epstein (29 AD3d 778), this Court held that the plaintiffs' use of their medical office in Kings County to sleep over for convenience a couple of nights a week did not render them residents of Kings County for venue purposes (see id. at 779). And in Katz v Siroty (62 AD2d 1011), the plaintiff, whose primary residence was in Scarsdale, retained the exclusive use of a bedroom in his sister and brother-in-law's home in Brooklyn, where he slept between 50 and 100 times per year when he visited his Manhattan law office or when he had to see people in localities such as Patchogue, Long Island (see id. at 1011-1012). This Court concluded that the plaintiff's "occasional use of a bedroom in his sister and brother-in-law's home when he transacts business in the New York metropolitan area does not support his contention that he has a second residence in Brooklyn" (id. at 1012).
By contrast, in Kelly v Karsenty (117 AD3d 912), this Court held that the plaintiff established that he had a bona fide intent to establish an additional residence in Queens with some degree of permanency by submitting a copy of a three-year lease for a cooperative apartment in Queens, which recited that the apartment was to be occupied by the plaintiff, along with several documents listing the apartment in Queens as his address, including a New York State tax bill, a bank account statement, and a union membership card (see id. at 912-913).
This case presents two issues relating to the parties' residence: (1) whether the parties' seasonal use of the Southampton house on weekends prior to March 2020 made them residents of Suffolk County; and (2) whether the defendant's retreat to the Southampton house at the outset of the COVID-19 pandemic made her a resident of Suffolk County. We conclude that neither of these things made the parties residents of Suffolk County.
The defendant clearly established that the parties primarily resided in New York County. The defendant submitted, among other things, copies of: the parties' income tax returns, listing their address in New York County as their residence and reflecting their payment of New York City income taxes; the defendant's voter registration showing that she was registered to vote in New York County; the defendant's driver license listing her address in New York County; motor vehicle records showing that the parties' cars were all registered in New York City or were in the process of having the registration transferred from New Jersey to New York City; an email from the plaintiff to the parties' art insurance carrier stating that the parties did not have any intention of adding any art to the Southampton house; and bank statements listing the Beresford apartment and the plaintiff's Manhattan office as the parties' addresses.
Although a person may have more than one residence, as in, for example, "a joint custody situation or other shared living arrangement" (Yaniveth R. v LTD Realty Co., 27 NY3d at 194), contrary to the plaintiff's contention, the defendant demonstrated that neither party resided in Suffolk County at the time of the commencement of the action.
With respect to the parties' use of the Southampton house prior to 2020, as the defendant notes, a highly instructive case is Daley v Daley (257 AD2d 593). In that case, the plaintiff moved out of the marital residence on Roosevelt Island and into another apartment in Manhattan, and commenced an action for a divorce in New York County (see id.). The Supreme Court, New York County, granted the defendant temporary exclusive occupancy of the marital residence, and the plaintiff was granted temporary exclusive occupancy of a house in Cutchogue, Long Island, which was previously used by the parties during the summer (see id. at 594). The [*4]plaintiff later served a notice discontinuing the New York County action and, immediately thereafter, he commenced a new action for a divorce in Suffolk County (see id.). The defendant moved to change the venue of the action to New York County, and this Court affirmed the grant of that motion, explaining that the plaintiff
"did not provide documentary evidence to support his claim regarding the permanent nature of his residence in Cutchogue, and he admitted that he 'frequently' resided in the Manhattan apartment during the work week. Moreover, we note that the plaintiff seeks exclusive occupancy of the marital residence on Roosevelt Island in this action. The defendant offered documentary evidence to support her contention that the Cutchogue residence was seasonal in nature and that the defendant continued to reside in Manhattan" (id.).
This Court further stated that "[i]n addition to the plaintiff's failure to establish that Suffolk County was his residence for venue purposes, we agree with the Supreme Court that the plaintiff's tactic in discontinuing the previous action and commencing this action in Suffolk County amounted to forum shopping" (id. at 594-595).
The plaintiff contends that Daley "is neither 'Second Department authority' nor does it hold that a seasonal residence is not a basis for venue" because: (1) it has never been cited on the issue of whether a seasonal home is a basis for venue; and (2) it is distinguishable from this case because "the overriding issue in Daley was the husband's bad faith tactics and attempts to forum shop." Notwithstanding the fact that Daley has not been subsequently cited for the proposition that a seasonal residence is not a basis for venue, that case did in fact hold a seasonal residence was not sufficient to establish a party's residency for venue purposes, at least where the party frequently resided in another location during the workweek (see id. at 594). And while this Court in Daley cited the plaintiff's bad faith tactics and attempts to forum shop, this Court indicated that this was an additional, independent ground for granting the defendant's motion to change venue that was separate from its primary conclusion that the plaintiff failed to establish that Suffolk County was his residence. This Court stated that "[i]n addition to the plaintiff's failure to establish that Suffolk County was his residence for venue purposes, we agree with the Supreme Court that the plaintiff's tactic in discontinuing the previous action and commencing this action in Suffolk County amounted to forum shopping" (id. at 594-595 [emphasis added]).
Here, in her affidavit submitted in support of her motion, the defendant averred that prior to 2020, the Southampton house was only used by the parties on weekends in the summertime, with limited exceptions, and that the only time the parties stayed in the Southampton house outside of the summer season was a few days over the Christmas holiday break in 2018. The plaintiff's affirmation submitted in opposition to the motion does not contain anything disputing these averments. The plaintiff stated in that affirmation that "[f]rom 2012 until we separated, we split our time between our residences in New Jersey, Manhattan, and Southampton. We used the Southampton Residence during summers and on other occasions. We have used it extensively in every year since we purchased it." Since it is undisputed that, prior to 2020, the parties only stayed in the Southampton house on weekends in the summer, with limited exceptions, contrary to the plaintiff's contention, neither party resided in Suffolk County at any time prior to 2020 (see id. at 594; see also Doe v Hall, 36 AD3d at 652; Stern v Epstein, 29 AD3d at 779; Katz v Siroty, 62 AD2d at 1011-1012).
Further, contrary to the Supreme Court's conclusion, the time the defendant spent in the Southampton house in 2020 during the COVID-19 pandemic was not enough to make her a resident of Suffolk County. In Morreale v 105 Page Homeowners Assn., Inc. (64 AD3d 689), the relevant testimony revealed that on or about December 31, 2005, the plaintiff moved to her son's apartment in Brooklyn from her house in Staten Island after a "diabetic episode," in March or April 2006, she entered into a contract to purchase a house in New Jersey, and on August 8, 2006, three days after commencing the subject action, she "took over" her new house in New Jersey, which she moved into in November 2006 (id. at 690 [internal quotation marks omitted]). This Court concluded that the appellants demonstrated that the plaintiff was only temporarily staying at the Brooklyn apartment at the time she commenced the action without the bona fide intent to retain the place as a residence for some length of time and with some degree of permanency (see id.). Similarly, in Ray-Ollenu v Kaufman Mgt. Co. (107 AD3d 476), the Appellate Division, First Department, concluded that the evidence in the record did not demonstrate the plaintiff's intent to reside in Bronx [*5]County with some degree of permanency because it showed only that the plaintiff stayed with her mother in Bronx County for a brief period of time while she was having marital problems with her husband. Finally, in Sibrizzi v Mount Tom Day School (155 AD2d 337), the First Department concluded that the plaintiffs' occupancy of a relative's home in the Bronx while their Westchester County home was being renovated indicated a lack of intent to remain in the Bronx (see id. at 338).
Here, although the defendant retreated to the Southampton house in March 2020, it is undisputed that the defendant planned only to stay there temporarily to assist her immunocompromised daughter and newborn grandchild when the COVID-19 pandemic was at its zenith in New York City. Under the circumstances of this case, the defendant did not "have the bona fide intent to retain [Suffolk County] as a residence with at least some degree of permanency" (Yaniveth R. v LTD Realty Co., 27 NY3d at 193 [internal quotation marks omitted]; see Morreale v 105 Page Homeowners Assn., Inc., 64 AD3d at 690; see also Ray-Ollenu v Kaufman Mgt. Co., 107 AD3d 476; Sibrizzi v Mount Tom Day School, 155 AD2d at 338).
Accordingly, because Suffolk County was not a proper venue, the Supreme Court should have granted the defendant's motion pursuant to CPLR 510 and 511 to change the venue of the action from Suffolk County to New York County. In light of our determination, we need not reach the issue of whether the defendant established her entitlement to a discretionary change of venue pursuant to CPLR 510(3) on the ground that the convenience of material witnesses and the ends of justice would be promoted by such a change.
Conclusion
For the foregoing reasons, the order is reversed, on the law, the defendant's motion pursuant to CPLR 510 and 511 to change the venue of the action from Suffolk County to New York County is granted, and the Clerk of the Supreme Court, Suffolk County, is directed to deliver to the Clerk of the Supreme Court, New York County, all papers filed in this action and certified copies of all minutes and entries (see id. § 511[d]).
CONNOLLY, IANNACCI and WOOTEN, JJ., concur.
ORDERED that the order is reversed, on the law, with costs, the defendant's motion pursuant to CPLR 510 and 511 to change the venue of the action from Suffolk County to New York County is granted, and the Clerk of the Supreme Court, Suffolk County, is directed to deliver to the Clerk of the Supreme Court, New York County, all papers filed in this action and certified copies of all minutes and entries (see id. § 511[d]).
ENTER:
Maria T. Fasulo
Clerk of the Court