E.S. v Windsor Owners Corp. (2024 NY Slip Op 00267)

E.S. v Windsor Owners Corp.

2024 NY Slip Op 00267

Decided on January 23, 2024

Appellate Division, First Department

OING, J. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: January 23, 2024
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Jeffrey K. Oing
Peter H. Moulton Barbara R. Kapnick John R. Higgitt

Index No. 159133/17 Appeal No. 778 Case No. 2022-04295 

[*1]E.S. et al., Plaintiffs-Respondents,
v
Windsor Owners Corp., et al., Defendants-Appellants, Martina Sersch, Defendant-Respondent.

Certain defendants appeal from an order of the Supreme Court, New York County (Lyle E. Frank, J.), entered on or about August 30, 2022, which, to the extent appealed from as limited by the briefs, granted plaintiffs' motion for summary judgment on liability as against defendant Windsor Owners Corp., and granted defendant Martina Sersch's cross-motion to dismiss the cross-claim for contractual indemnification asserted against her by Windsor.

Gallo Vitucci & Klar LLP, New York (C. Briggs Johnson and William Parra of counsel), for appellants.
Pollack, Pollack, Isaac & DeCicco, LLP, New York (Joshua Block and Brian J. Isaac of counsel), for E.S. and Aminata S., respondents.
Matt Simon Law, New York (Matthew C. Simon and Gabrielle D. Wasenius of counsel), for Martina Sersch, respondent.

OING, J. 

Plaintiff Aminata S. alleges that her child, infant plaintiff E.S., who was 18 months old during the relevant time period, was exposed to lead paint while residing in a cooperative apartment that she subleased from defendant Martina Sersch, the apartment's shareholder. She alleges that the exposure resulted in lead poisoning of E.S. Defendant Windsor Owners Corp. (Windsor) is the owner of the building, which is managed by defendant Tudor Realty Services Corp. (Tudor). The proprietary lease requires shareholders to obtain Windsor's consent for a sublease, and provides that shareholders agree to hold Windsor "harmless from all liability, loss, damage and expense arising from injury to person or property occasioned by the failure of the Lessee to comply with any provision" of the lease or "due wholly or in part to any act, default or omission of the Lessee."
In a sublease dated July 8, 2016, Sersch, as "Landlord" sublet to plaintiff, as "Tenant," a furnished "apartment with 1 bedrooms and 1 bathrooms, located at 5 Tudor City Place" in exchange for rent of $2,950 per month for the term beginning August 1, 2016 and ending July 31, 2017, which term shall "renew . . . for two consecutive years following the first termination date July 31, 2017 until July 31, 2019." Monthly payments were to be made to Sersch at a California address. The sublease further provided that the apartment "may be occupied by the Tenant(s) named herein and by the immediate family of the Tenant(s)," and that plaintiff "will be entitled to possession of the Property on the first day of the term of this Agreement, and will yield possession to Landlord on the last day of the term of this Agreement." Paragraph 12 listed the various furnishings to be provided by Sersch as Landlord, ranging from a kitchen table and two chairs to a list of appliances such as a cooktop and refrigerator. The sublease contained, among other documents, a standard form lead disclosure and a New York City lead paint notice. The box on the notice indicating that "[a] child under seven years of age resides in the unit" was checked, and Sersch acknowledged the information in this notice. Plaintiff did not sign [*2]this notice. Sersch did not submit the sublease to Windsor or Tudor to obtain Windsor's consent.
Upon learning of the unapproved sublet in early May 2017, Windsor served Sersch with a Notice to Cure dated May 8, 2017, advising her that plaintiff was an illegal occupant of the apartment because Sersch had sublet the apartment to plaintiff in violation of the proprietary lease's sublet policy, which required her to obtain Windsor's prior approval. Sersch and Windsor later entered into a stipulation of settlement dated June 5, 2017, wherein Sersch acknowledged that plaintiff "has been in occupancy of the subject apartment since August 1, 2016, as a sub-tenant, without prior Board approval," which approval Sersch "claims to have been unaware . . . was needed." Pursuant to the stipulation of settlement, Sersch agreed "to pay the sum of $2,158.77, representing sublet fees, retroactive to August 1, 2016, together with an illegal sublet charge of $1,000.00 for a total of $3,158.77." On the condition that this payment was made, Windsor agreed that "the current illegal occupant [plaintiff] shall be entitled to remain in occupancy of the subject apartment through and including June 30, 2017."
On May 31, 2017, the infant plaintiff underwent routine blood tests that revealed he had elevated levels of lead, and he was ultimately diagnosed with lead poisoning. On June 9, 2017, the New York City Department of Health and Mental Hygiene (DOH) inspected the apartment and determined that numerous areas of the apartment contained peeling or chipping paint with hazardous levels of lead, leading the DOH to issue an order, dated June 20, 2017, directing Sersch to remove, correct, or otherwise abate the lead paint violations. Sersch paid for the lead paint remediation. This action ensued.
Following completion of discovery, plaintiffs moved for summary judgment on the issue of liability against all defendants. Sersch cross-moved to dismiss Windsor and Tudor's contractual indemnification cross-claim asserted against her. Supreme Court granted plaintiffs' motion for summary judgment on liability as to Windsor and Sersch, but denied the motion as to Tudor on the ground that it, as the management company, could not be held liable for the infant plaintiff's lead poisoning. The court found Windsor's assertion of a cohabitation living arrangement between plaintiff and Sersch, which Windsor claimed relieved it of liability under the Administrative Code of the City of NY § 27-2056.15(c), to be "feigned" because the sublease clearly demonstrated that Sersch was not to reside in the apartment during the sublease period. Windsor and Sersch appealed the liability determination. We note that Sersch has since withdrawn her appeal. Supreme Court also granted Sersch's cross-motion to dismiss Windsor and Tudor's cross-claim for contractual indemnity against her. As to Windsor, Supreme Court reasoned that because it had been found liable to plaintiffs, it could not be indemnified for its [*3]own negligence, citing General Obligations Law § 5-321. Windsor appeals this determination. Concerning Tudor, Supreme Court merely directed dismissal of the cross-claim in its decretal. Tudor does not challenge the dismissal of the cross-claim on appeal.
Local Law 1 obligates landlords to take action to prevent reasonably foreseeable injury to children seven years of age or younger from peeling lead paint in multiple dwelling units built before January 1, 1960, such as the one the infant plaintiff resided in, and to expeditiously remediate such conditions and underlying defects (Administrative Code §§ 27-2056.3, 27-2056.18; see Yaniveth R. v LTD Realty Co., 27 NY3d 186, 191 [2016]). A plaintiff demonstrates prima facie liability by showing (1) that the subject premises were built before January 1, 1960; (2) that plaintiff suffered injuries from lead poisoning from ingesting lead-based paint in the premises; (3) that plaintiff was seven years old or under when exposed to the lead-based paint; and (4) that the owner had actual or constructive notice that the plaintiff was seven years old or younger while residing in the premises (see generally Juarez v Wavecrest Mgt. Team, 88 NY2d 628 [1996]). Of these factors, Windsor limits its argument to Supreme Court's finding that it had constructive notice that the infant plaintiff resided in the apartment because the court made no findings as to actual notice. Windsor contends that it had no knowledge of the infant plaintiff's residence because Sersch never disclosed that she was subletting her apartment to plaintiff, that it never received plaintiff's New York City lead paint notice, in which plaintiff disclosed that a child seven years old or younger resided in the unit, and that the earliest it became aware of the infant plaintiff's residence in the apartment was around May 2017, approximately nine months after plaintiffs had moved into the apartment. Windsor's arguments are unavailing.
Here, plaintiffs demonstrated prima facie entitlement to summary judgment by submitting evidence that Windsor had constructive notice of the infant plaintiff's residence in the apartment since August 2016, and thus that it was obliged to expeditiously inspect and remediate any lead paint condition (Administrative Code §§ 27-2056.3, 27-2056.18; see Yaniveth R., 27 NY3d at 191). Plaintiff testified that she openly moved into the apartment in summer 2016; introduced herself, the infant plaintiff, and her other child to the doormen as the new tenants in the apartment; added herself as the tenant to the building communications system; regularly received packages and deliveries; scheduled repairs; and greeted the doormen with her children on a daily basis. The doormen's knowledge is attributed to Windsor because it is within the scope of their duty to observe tenants as they enter and leave the building (see Worth Distribs. v Latham, 59 NY2d 231, 238 [1983]). Windsor's argument that the doormen had no duty to report to it or [*4]to Tudor about young children living in the building is unavailing in the absence of an affidavit from the doormen employed during the relevant period setting forth their duties and responsibilities. Plaintiff further testified that the superintendent and other building staff came to the apartment to make repairs during her subtenancy. The building superintendent corroborated plaintiff's testimony when he testified that in the beginning of May 2017 he saw the infant plaintiff in the apartment when he went to repair a plumbing problem. The superintendent additionally testified that after this encounter he reported to Tudor that plaintiff and her children were residing in the apartment under an illegal sublease because he knew Sersch was the apartment's shareholder and was the person who should be living in the apartment. Windsor's agents' frequent and consistent interactions with plaintiff and the infant plaintiff were sufficient to provide constructive notice to Windsor (see Munoz v 42 Holding Corp., 30 AD3d 361, 362 [1st Dept 2006]). Windsor failed to proffer an affidavit from any of the doormen stating that they did not know plaintiff and the infant plaintiff or were unaware of their residence. Under these circumstances, Windsor failed to raise a triable issue of fact as to the issue of constructive notice (see Peri v City of New York, 44 AD3d 526, 528 [1st Dept 2007], affd 11 NY3d 756 [2008]).
Administrative Code § 27-2056.15(c) provides:
"[Local Law 1] shall not apply to a dwelling unit in a multiple dwelling where (i) title to such multiple dwelling is held by a cooperative housing corporation or such dwelling unit is owned as a condominium unit, and (ii) such dwelling unit is occupied by the shareholder of record on the proprietary lease for such dwelling unit or the owner of record of such condominium unit, as is applicable, or the shareholder's or record owner's family."
Windsor argues that section 27-2056.15(c) exempts it from the duty to remediate and abate the lead paint in the apartment because Sersch "occupied" the apartment during plaintiffs' subtenancy. Here, the terms of the sublease and the stipulation of settlement clearly indicate that the apartment was not "occupied" by Sersch during plaintiffs' subtenancy. Moreover, the sublease's express terms clearly provide for Sersch to have access to the property only for the purpose of inspection or to make repairs or improvements. Windsor, however, argues that "occupied" should be defined by Sersch's conduct with respect to the apartment during the subtenancy. It points to Sersch's EBT testimony that she leased only a portion of the apartment to plaintiff and her family, that she continued to "reside" in the apartment on the occasions she was in New York, that she could enter the apartment to spend the night without notice to plaintiff, and that she and plaintiff were "cohabitants" in order for plaintiff to avoid a lengthy board approval process, all of which Windsor claims is clear [*5]proof that Sersch occupied the apartment. Essentially, Windsor's position is that Sersch's conduct overrides other evidentiary proof and should be determinative in resolving whether she occupied the apartment. We reject the argument that conduct is the determinative factor. Instead, conduct is but a factor to consider in resolving this issue, and may raise an issue of fact when it is at odds with other evidentiary proof.
Although the term "occupied" is not defined in Local Law 1, we ascribe to it the general meaning it has in the New York City Rent Stabilization Law (see Administrative Code, title 26, ch 4). We note that Windsor does not even attempt to define this term, but merely argues that the record supports its position that Sersch occupied the apartment. The term, as used throughout that law, denotes a residential landlord-tenant relationship conferring upon the tenant a possessory interest in a dwelling unit, which the tenant actively holds or uses the dwelling unit as a customary place of abode and regularly returns to the dwelling unit for more than brief periods of time.
Here, Sersch's testimony as to her conduct concerning the apartment during the subtenancy does not compel a finding that she occupied the apartment or that a factual issue exists. The totality of Sersch's testimony on this issue demonstrates that she had an indisputably international and nomadic lifestyle, and that even if she had, in fact, spent time at the apartment on some unspecified days during the relevant period, her occupation was fleeting, transient, and serendipitous. Sersch's occupation did not amount to a possessory interest in which she actively held or used the apartment as a customary place of abode and regularly returned to it for more than brief periods of time. Accordingly, we find that the apartment was not occupied by Sersch within the meaning of section 27-2056.15(c).
Turning to indemnification, dismissal of Windsor's cross-claim for contractual indemnification against Sersch was warranted because paragraph 11 of the proprietary lease purports to indemnify Windsor for its own negligence, which violates General Obligations Law § 5-321.
Accordingly, the order of the Supreme Court, New York County (Lyle E. Frank, J.), entered on or about August 30, 2022, which, to the extent appealed from as limited by the briefs, granted plaintiffs' motion for summary judgment on liability as against defendant Windsor Owners Corp., and granted defendant Martina Sersch's cross-motion to dismiss the cross-claim for contractual indemnification asserted against her by Windsor, should be affirmed, without costs.
Order, Supreme Court, New York County (Lyle E. Frank, J.), entered on or about August 30, 2022, affirmed, without costs.
Opinion by Oing, J.P. All concur.
Oing, J.P., Moulton, Kapnick, Higgitt, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: January 23, 2024